

J. ERNIE QUILTER
Lucas County Clerk of Court
LUCAS COUNTY COURTHOUSE
700 ADAMS STREET
TOLEDO OHIO 43624

7022 0410 0000 2359 9875

US POSTAGE PITNEY BOWES
ZIP 43604 $ 020.00
02 4W
0000359174 DEC. 20 2022

UNUM LIFE INSURANCE COMPANY OF
AMERICA
2211 CONGRESS STREET
PORTLAND, ME 04122



**UNUM**

| | |
|---|---|
| Recipient: | PortDM |
| Campus: | PTLD |
| Mailstop: | PORTDM |

**Tue Dec 27 12:55:40 EST 2022**

7022041000002359875

**EXHIBIT A**





# LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604

## SUMMONS
## CIVIL ACTION

FILING TYPE:                           OTHER CIVIL

UNUM LIFE INSURANCE COMPANY OF
AMERICA
2211 CONGRESS STREET
PORTLAND, ME 04122

G-4801-CI-0202204661-000
JUDGE: LORI L OLENDER

    You have the right to seek legal counsel. If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio. If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

    You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below. A copy of the Complaint is attached to this Summons.

    You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service or to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer. Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

    If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)
AMY REMER
118 CRABAPPLE DR
SWANTON, OH 43558-8411

ATTORNEY FOR PLAINTIFF(S)
JEREMIAH T RODRIGUEZ
PRESTON BUILDING
3240 LEVIS COMMONS BLVD
PERRYSBURG, OH 43551

BERNIE QUILTER
CLERK OF COURTS

Date: December 20, 2022

_J Bernie Quilter_ , Clerk





# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐ I request to be notified by <u>email</u>

My email address _____

**'OR'**

☐ I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address _____

_____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:     G-4801-CI-0202204661-000
           UNUM LIFE INSURANCE
COMPANY OF AMERICA
Message:    Your email address

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH 43604

---

**If you do NOT hire an attorney & fail to respond
you will NOT receive notification of events related to this case**

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

G-4801-CI-0202204661-000    UNUM LIFE INSURANCE COMPANY OF AMERICA   Generated: December 20, 2022

EFILED LUCAS COUNTY
12/19/2022 3:56 PM
COMMON PLEAS COURT
BERNIE QUILTER, CLERK
ENV#: 50277

**IN THE COURT OF COMMON PLEAS**
**LUCAS COUNTY, OHIO**
**CIVIL DIVISION**

|  |  |
|---|---|
| **Amy Remer**<br>**118 Crabapple Dr.**<br>**Swanton, OH 43558-8411,**<br><br>        **Plaintiff,**<br><br>    **vs.**<br><br>**Unum Life Insurance Company of America**<br>**2211 Congress Street**<br>**Portland, ME 04122**<br><br>        **Defendant.** | **Case No.:**    G-4801-CI-0202204661-000<br><br>**Judge:**    Judge Lori L. Olender<br><br>**COMPLAINT AND REQUEST FOR A**<br>**JURY TRIAL AND DECLARATORY**<br>**RELIEF**<br><br>**Jeremy T. Rodriguez (0081495)**<br>**jrodriguez@allottafarley.com**<br>**Jonathan Winters (0089276)**<br>**jwinters@allottafarley.com**<br>**Allotta | Farley Co. L.P.A.**<br>**Preston Building**<br>**3240 Levis Commons Blvd.**<br>**Perrysburg, Ohio 43551**<br>**Telephone: (419) 535-0075**<br>**Facsimile: (419) 535-1935**<br><br>**Counsel for Plaintiff** |

Now comes Plaintiff Amy Remer, by and through her attorneys, and for her complaint against Defendant alleges and avers as follows:

Received 12/20/2022

## I. PARTIES

1.      Unum Life Insurance Company of America (hereinafter, "Unum") is a corporation located in Portland, Maine that is engaged in the sale of life and disability insurance within the State of Ohio.

2.      Plaintiff Amy Remer (hereinafter, "Mrs. Remer") is a resident of the State of Ohio, domiciled in the County of Lucas.

## II. FACTUAL ALLEGATIONS

3.      Unum's life insurance and disability contracts include group insurance contracts. One such group disability policy, was sold to the University of Toledo.

4.      The policy number for the group disability policy held by the University of Toledo is Policy Number 953733 001 (hereinafter, the "Policy") and was effective January 1, 2020. A copy of the Policy is attached hereto as "Exhibit A."

5.      Mrs. Remer was a full-time employee at the University of Toledo who initially began working at the University in 2009 as a teaching assistant. She then worked as a part-time instructor and Clinical Supervisor beginning in 2011 before becoming a full-time employee in 2013. Mrs. Remer is currently on unpaid medical leave with the University of Toledo.

6.      As a benefit of her employment, the University of Toledo offered disability insurance coverage through the Policy offered by the Defendant.

7.      The Policy provides for the payment of benefits in the event of disability.  To qualify for benefits during the first twenty-four (24) months following a disability, the Policy requires Mrs. Remer to show that she (1) is unable to perform any of the material duties of her regular job due to injury or illness, and (2) had a twenty percent (20%) or greater loss in her "indexed monthly earnings" due to that same sickness or injury. After twenty-four (24) months,

2

received 12/20/2022

to remain disabled under the Policy Mrs. Remer must be considered unable to perform the duties of any gainful occupation for which she is reasonably fitted by education, training, or experience due to that same injury or illness.

8.      The Policy defines "monthly earnings" under the Policy Section entitled, "What Are Your Monthly Earnings?" in the following manner:

> "gross monthly income from your Employer, including shift differential, in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, or any other extra compensation or income received from sources other than your Employer."

9.      The Policy indicates that notice of a claim "should be sent within 30 days after the date your disability begins." However, it also provides that "you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity."

10.     In March of 2017, Mrs. Remer was diagnosed with stage 3 myxofibrosacoma in her upper left arm. The cancer was discovered during a scan while she was pregnant with her fourth child. The discovery prompted Mrs. Remer to undergo twelve (12) weeks of chemotherapy, thirty (30) radiation treatments, and a radial section of her deltoid muscle in the tissue around the cancerous area.

11.     Following treatment and surgery Mrs. Remer returned to work with the University of Toledo and was cancer free until 2019, when she had a recurrence of the sarcoma in the lymph nodes above her upper left armpit. As a result, Mrs. Remer underwent another surgery and additional chemotherapy and radiation treatments.

12.     Mrs. Remer again returned to work following her treatment and surgery. However, in the summer of 2020 she learned that the cancer had returned a third time. At this

Scanned 12/20/2022

juncture, a scan showed she had two separate tumors growing in the upper left arm area. Her medical team recommended that the best course of action was to perform a four-quarter amputation. This type of amputation removes the entire arm, shoulder, clavicle, and scapula.

13.     Prior to the surgery, Mrs. Remer discussed the matter with her employer, the University of Toledo. Despite the severity of the surgery, Mrs. Remer was determined to resume her normal activities, both personal and professional, as soon as possible following the procedure and a time to adjust. Her employer agreed to work with her during her recovery and both parties expected her to return to work. On September 7, 2020, Mrs. Remer underwent the four-quarter amputation of her left arm.

14.     After surgery, Mrs. Remer began looking for a customized robotic arm. Because her health insurance company denied her claim, she was not fitted with a customized robotic arm until the summer of 2021.

15.     Mrs. Remer remained in contact with her employer during this period and continued to receive her regular salary. Both parties expected Mrs. Remer to return to work once she adjusted to the new prosthetic limb.

16.     Despite the new limb, Mrs. Remer continues to face challenges in her day-to-day living, including both physical pain and mental health concerns. As result, in January of 2022 Mrs. Remer realized that she was unable to return to work at the same capacity she did prior to the surgery.

17.     Mrs. Remer notified her employer of this in January of 2022 and was subsequently placed on unpaid medical leave. Prior to this notification, Mrs. Remer had continued to receive her regular salary from her employer.

4

18.     On April 8, 2022, Mrs. Remer filed a claim for long-term disability benefits under the Policy with the Defendant.

19.     Mrs. Remer also filed a claim for disability benefits under the Ohio State Teachers Retirement System Defined Benefit Plan (hereinafter, the "Ohio STRS Plan). The Ohio STRS Plan has a disability standard that is similar standard to the Defendant's in that it requires the participant to prove (1) a disabling medical condition that prevents the individual from performing his or her most recent job duties; and (2) the condition is expected to last at least 12 continuous months from the date the Ohio STRS Plan receives the completed application. A copy a brochure from the Ohio STRS Plan is attached hereto as "Exhibit B." Mrs. Remer's application for disability benefits from the Ohio STRS Plan was approved on October 20, 2022.

20.     On April 22, 2022, the Defendant notified Mrs. Remer that it was refusing to consider her claim because it was not filed within one-year from her disability on-set date. According to the Defendant, Mrs. Remer's claim "should have been received no later than September 8, 2021. Because we did not receive your claim by this date, we are unable to complete a thorough review of your claim." A copy of the April 22, 2022 denial letter is attached hereto as "Exhibit C."

21.     Mrs. Remer filed an appeal on May 27, 2022. A copy of the May 27, 2022 appeal letter is attached hereto as "Exhibit D." In that appeal, Mrs. Remer requested that the Defendant review her claim and pointed out the Departments of Labor, Treasury, IRS, and Center for Medicare and Medicaid Services had requested plans to extend deadlines due to the COVID-19 pandemic, questioned the disability onset date of September 8, 2020, and noted the lack of prejudice to the Defendant since her claim was submitted a mere six months past the purported deadline.

5

Received 12/20/2022

.

22.     Nevertheless, on June 10, 2022, the Defendant notified Mrs. Remer that it was upholding its original denial of her claim. A copy of the June 10, 2022 denial letter is attached hereto as "Exhibit E." In that denial, the Defendant indicated that "Mrs. Remer's written proof of claim was submitted after the policy deadline. She filed her claim on April 08, 2022, and this date was not within one year of her disability that occurred on September 08, 2020."

23.     Mrs. Remer filed a Request for Reconsideration with the Defendant on August 10, 2022. A copy of the Request for Reconsideration letter is attached hereto as "Exhibit F." In that reconsideration request, Mrs. Remer clearly informed the Defendant that since she continued to receive her regular salary from her employer until January of 2022, she never experienced a drop in her "indexed monthly earnings," let alone a decrease of twenty percent (20%) or more (as required by the Policy). As a result, she could not be considered "disabled" under the Policy as of September 8, 2020. That also means her deadline could not be September 8, 2021. In support of her claim, Mrs. Remer attached her IRS W-2 Forms from her employer for the 2019, 2020, and 2021 taxable years.

24.     Just one day later, the Defendant quickly responded to Mrs. Remer upholding its decision to deny her claim. A copy of the August 11, 2022 denial letter is attached hereto as "Exhibit G." In doing so, the Defendant noted that:

> "We acknowledge that Ms. [sic] Remer was receiving salary continuation from her employer after her arm amputation and that she would resume working after she was fitted with a prosthetic and had time to adjust. However, the earnings she received were not the result of performing her occupational duties. Ms. [sic] Remer's disability began when she was unable to perform the material and substantial duties of her occupation as of September 08, 2022, which is the date we determined her disability began."

25.     The August 11, 2022 denial letter from the Defendant contained no reference to any provision in the Policy that would support this determination. Nevertheless, the Defendant

Document 1 12/20/2022

concluded by stating "the information you provided does not alter our prior appeal decision. Please refer to our appeal determination of June 10, 222, which remains unchanged."

26.     Mrs. Remer has exhausted all administrative remedies with the Defendant.

27.     Defendant's conduct has caused Mrs. Remer to sustain personal and financial hardship and monetary loss.

28.     Mrs. Remer has suffered, and will continue to suffer, irreparable injury due to Defendant's continued, and repeated, refusal to evaluate Mrs. Remer's claim for disability benefits under the Policy.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

29.     Plaintiff hereby incorporates the allegations set forth Paragraphs 1 through 28 as if fully rewritten herein.

30.     Mrs. Remer had produced sufficient evidence to the Defendant establishing that the disability on-set date of September 8, 2020 is improper under the terms of the Policy.

31.     Nevertheless, Defendant continues to refuse to evaluate the merits of Mrs. Remer's claim for disability benefits, forcing her to file suit simply to have her claim considered.

32.     The Defendant's failure to evaluate the merits of Mrs. Remer's claim for disability benefits under the Policy constitutes a breach of express and implied contract pursuant.

## SECOND CLAIM FOR RELIEF
## BAD FAITH DENIAL OF AN INSURANCE CLAIM

33.     Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 32 as if fully rewritten herein.

34.     Despite acknowledging that Mrs. Remer and her employer expected her to return to work following the fitting of a prosthetic arm, and that she continued to receive her regular

7

Scanned 12/20/2022

salary from her Employer following her surgery, the Defendant for disability benefits on the basis that it was not timely filed.

35.   By electing to uphold the denial and issue a letter merely one day after Mrs. Remer submitted additional evidence, including copies of her IRS Form W-2 for multiple tax years, it is unclear if the Defendant conducted a full and fair review.

36.   Defendant's conduct appears geared towards its own economic benefit as opposed to fulfilling its duty to operate in good faith.

37.   Further, the Defendant's decision to insert terms and conditions that are not present in the Policy represents a failure to act in good faith under Ohio insurance law.

38.   Accordingly, there is no reasonable justification for Defendant's continued refusal to evaluate the merits of Mrs. Remer's claim for disability benefits under the Policy.

39.   As a result, the Defendant has engaged in bad faith in its continued denial of Mrs. Remer's claim for benefits under the Policy.

**THIRD CLAIM FOR RELIEF**
**INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS**

40.   Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 39 as if fully rewritten herein.

41.   The Defendant intentionally misconstrued its own policy solely to support its denial to even review the merits of Mrs. Remer's claim. This misconstruction included inserting terms and conditions which are not present in the Policy.

42.   The Defendant's actions were outrageous, in bad faith, and for its own economic benefit.

43.   The actions of the Defendant forced Mrs. Remer to obtain the undersign counsel merely to the merits of her claim reviewed, thus causing Mrs. Remer severe emotional distress.

12/20/2022

.

44.     The Defendant's conduct was intentionally directed to frustrate the efforts of Mrs. Remer to pursue a claim under the Policy and to further its own economic benefit.

45.     Accordingly, the Defendant through its conduct is liable to Mrs. Remer for the intentional infliction of emotional distress.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

(A)     For declaratory relief requiring defendant to provide full benefits under the disability policy;

(B)     For an award of compensatory and punitive damages;

(C)     For an award of costs and reasonable attorneys fees;

(D)     For such other relief as the Court deems appropriate.

Respectfully submitted:

By: */s/Jeremy T. Rodriguez*
    Jeremy T. Rodriguez (0081495)
    jrodriguez@allottafarley.com
    Allotta | Farley Co. L.P.A.
    Preston Building
    3240 Levis Commons Blvd.
    Perrysburg, Ohio 43551
    Telephone: (419) 535-0075
    Facsimile: (419) 535-1935

    Counsel for Plaintiff

Scanned 12/20/2022

 **GROUP INSURANCE POLICY**
**NON-PARTICIPATING**

**POLICYHOLDER:**    University of Toledo

**POLICY NUMBER:**    953733 001

**POLICY EFFECTIVE DATE:**    January 1, 2020

**POLICY ANNIVERSARY DATE:** January 1

**GOVERNING JURISDICTION:**    Ohio

Unum Life Insurance Company of America (referred to as Unum) will provide benefits under this policy.  Unum makes this promise subject to all of this policy's provisions.

The policyholder should read this policy carefully and contact Unum promptly with any questions.  This policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.  This policy consists of:

-    all policy provisions and any amendments and/or attachments issued;
-    employees' signed applications; and
-    the certificate of coverage.

This policy may be changed in whole or in part.  Only an officer or a registrar of Unum can approve a change.  The approval must be in writing and endorsed on or attached to this policy.  No other person, including an agent, may change this policy or waive any part of it.

Signed for Unum at Portland, Maine on the Policy Effective Date.

President                                    Secretary

**Unum Life Insurance Company of America**
**2211 Congress Street**
**Portland, Maine 04122**

12/20/2022

# TABLE OF CONTENTS

BENEFITS AT A GLANCE ........................................................................................B@G-LTD-1

LONG TERM DISABILITY PLAN ..............................................................................B@G-LTD-1

CLAIM INFORMATION ...........................................................................................LTD-CLM-1

LONG TERM DISABILITY........................................................................................LTD-CLM-1

POLICYHOLDER PROVISIONS................................................................................EMPLOYER-1

CERTIFICATE SECTION .........................................................................................CC.FP-1

GENERAL PROVISIONS.........................................................................................EMPLOYEE-1

LONG TERM DISABILITY........................................................................................LTD-BEN-1

BENEFIT INFORMATION ........................................................................................LTD-BEN-1

OTHER BENEFIT FEATURES...................................................................................LTD-OTR-1

OTHER SERVICES.................................................................................................SERVICES-1

GLOSSARY..........................................................................................................GLOSSARY-1

Scanned 12/20/2022

# BENEFITS AT A GLANCE

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you are disabled.  The amount you receive is based on the amount you earned before your disability began.  In some cases, you can receive disability payments even if you work while you are disabled.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**      January 1, 2020

**POLICY NUMBER:**     953733  001

**ELIGIBLE GROUP(S):**

Group 1
All Main Campus Benefits Eligible Classified Exempt, Faculty, and All Other Unclassified Employees in active employment in the United States with the Employer

Group 2
All Full-Time Health Science Campus Benefits Eligible Executives, Contracted, Salaried Employees, and Non-Contracted Resident Physicians in active employment in the United States with the Employer

**MINIMUM HOURS REQUIREMENT:**

Employees must be working at least 40 hours per week on a regularly scheduled basis.

**WAITING PERIOD:**

For employees in an eligible group on or before January 1, 2020:  None

For employees entering an eligible group after January 1, 2020:  None

**WHO PAYS FOR THE COVERAGE:**

Your Employer pays the cost of your coverage.

**ELIMINATION PERIOD:**

180 days

Benefits begin the day after the elimination period is completed.

**MONTHLY BENEFIT:**

**All Main Campus Benefits Eligible Classified Exempt, Faculty, and All Other Unclassified Employees**
70% of monthly earnings to a maximum benefit of $5,000 per month.

**Your payment may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may have limited coverage under this plan.**

**All Full-Time Health Science Campus Benefits Eligible Executives, Contracted, Salaried Employees, and Non-Contracted Resident Physicians**
60% of monthly earnings to a maximum benefit of $10,000 per month.

**Your payment may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may have limited coverage under this plan.**

**MAXIMUM PERIOD OF PAYMENT:**

| Age at Disability | Maximum Period of Payment |
| --- | --- |
| Less than Age 62 | To Social Security Normal Retirement Age |

Sandusky Electronically Filed 12/20/2022

| | |
|---|---|
| Age 62 | 60 months |
| Age 63 | 48 months |
| Age 64 | 42 months |
| Age 65 | 36 months |
| Age 66 | 30 months |
| Age 67 | 24 months |
| Age 68 | 18 months |
| Age 69 or older | 12 months |

| Year of Birth | Social Security Normal Retirement Age |
|---|---|
| 1937 or before | 65 years |
| 1938 | 65 years 2 months |
| 1939 | 65 years 4 months |
| 1940 | 65 years 6 months |
| 1941 | 65 years 8 months |
| 1942 | 65 years 10 months |
| 1943-1954 | 66 years |
| 1955 | 66 years 2 months |
| 1956 | 66 years 4 months |
| 1957 | 66 years 6 months |
| 1958 | 66 years 8 months |
| 1959 | 66 years 10 months |
| 1960 and after | 67 years |

No premium payments are required for your coverage while you are receiving payments under this plan.

**REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFIT:**

10% of your gross disability payment to a maximum benefit of $1,000 per month.

In addition, we will make monthly payments to you for 3 months following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

**DEPENDENT CARE EXPENSE BENEFIT:**

While you are participating in Unum's Rehabilitation and Return to Work Assistance program, you may receive payments to cover certain dependent care expenses limited to the following amounts:

Dependent Care Expense Benefit Amount:  $350 per month, per dependent

Dependent Care Expense Maximum Benefit Amount:  $1,000 per month for all eligible dependent care expenses combined

**TOTAL BENEFIT CAP:**

The total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 100% of your monthly earnings.  However, if you are participating in Unum's Rehabilitation and Return to Work Assistance program, the total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 110% of your monthly earnings.

**OTHER FEATURES:**

Continuity of Coverage

Minimum Benefit

Pre-Existing: 3/12

Survivor Benefit

Scanned 12/20/2022

.

**The above items are only highlights of this plan.  For a full description of your coverage, continue reading your certificate of coverage section.**

The plan includes enrollment, risk management and other support services related to your Employer's Benefit Program.

# CLAIM INFORMATION

# LONG TERM DISABILITY

### WHEN DO YOU NOTIFY UNUM OF A CLAIM?

We encourage you to notify us of your claim as soon as possible so that a claim decision can be made in a timely manner.  Notice of claim should be sent within 30 days after the date your disability begins.  In addition, you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity.  In no event can proof of your claim be submitted after the expiration of the time limit for commencing a legal proceeding as stated in the policy, even if your failure to provide proof of claim is due to a lack of legal capacity or if state law provides an exception to the one year time period.

You must notify us immediately when you return to work in any capacity.

### HOW DO YOU FILE PROOF OF CLAIM?

You and your Employer must fill out your own sections of the claim form and then give it to your attending physician.  Your physician should fill out his or her section of the form and send it directly to Unum.

The form to use to submit your proof of claim is available from your Employer, or you can request the form from us.  If you do not receive the form from Unum or your Employer within 15 days of your request, send Unum proof of claim without waiting for the form.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of your claim, provided at your expense, must show:

- the date your disability began;
- the existence and cause of your sickness or injury;
- that your sickness or injury causes you to have limitations on your functioning and restrictions on your activities preventing you from performing the material and substantial duties of your regular occupation or of any other gainful occupation for which you are reasonably fitted by education, training, or experience;
- that you are under the **regular care** of a **physician;**
- the name and address of any **hospital or institution** where you received treatment, including all attending physicians; and
- the appropriate documentation of your monthly earnings, any disability earnings, and any deductible sources of income.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability.  We may also require that you send us appropriate financial records, which may include income tax returns, which we believe are necessary to substantiate your income.  We may request that you send periodic proof of your claim.  This proof, provided at your expense, must be received within 45 days of a request by us.  Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

Scanned 12/20/2022

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to meet with and be interviewed by an authorized Unum Representative. Unum will deny your claim, or stop sending you payments, if you fail to comply with our requests.

## TO WHOM WILL UNUM MAKE PAYMENTS?

Unum will make payments to you.

## WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim;
- disability earnings; or
- deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made which may include reducing or withholding future payments including the minimum monthly payment.

Unum will not recover more money than the amount we paid you.

Any unpaid premium due for your coverage under this policy may be recovered by us by offsetting against amounts otherwise payable to you under this policy, or by other legally permitted means.

.

# POLICYHOLDER PROVISIONS

### *WHAT IS THE COST OF THIS INSURANCE?*

## <u>LONG TERM DISABILITY</u>

The initial premium for each **plan** is based on the initial rate(s) shown in the Rate Information Amendment(s).

### *WAIVER OF PREMIUM*

Unum does not require premium payments for an insured while he or she is receiving Long Term Disability payments under this plan.

### *INITIAL RATE GUARANTEE AND RATE CHANGES*

Refer to the Rate Information Amendment(s).

### *WHEN IS PREMIUM DUE FOR THIS POLICY?*

Premium Due Dates: Premium due dates are based on the Premium Due Dates shown in the Rate Information Amendment(s).

The **Policyholder** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

### *WHEN ARE INCREASES OR DECREASES IN PREMIUM DUE?*

Premium increases or decreases which take effect during a policy month are adjusted and due on the next premium due date following the change. Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

Unum will only adjust premium for the current policy year and the prior policy year. In the case of fraud, premium adjustments will be made for all policy years.

### *WHAT INFORMATION DOES UNUM REQUIRE FROM THE POLICYHOLDER?*

The Policyholder must provide Unum with the following on a regular basis:

- information about employees:
  - who are eligible to become insured;
  - whose amounts of coverage change; and/or
  - whose coverage ends;
- occupational information and any other information that may be required to manage a claim; and
- any other information that may be reasonably required.

Policyholder records that, in Unum's opinion, have a bearing on this policy will be available for review by Unum at any reasonable time.

Scanned 12/20/2022

Clerical error or omission by Unum will not:

- prevent an employee from receiving coverage;
- affect the amount of an insured's coverage; or
- cause an employee's coverage to begin or continue when the coverage would not otherwise be effective.

### WHO CAN CANCEL OR MODIFY THIS POLICY OR A PLAN UNDER THIS POLICY?

This policy or a plan under this policy can be cancelled:

- by Unum; or
- by the Policyholder.

Unum may cancel or modify this policy or a plan if:

- there is less than 75% participation of those eligible employees who pay all or part of their premium for a plan; or
- there is less than 100% participation of those eligible employees for a Policyholder paid plan;
- the Policyholder does not promptly provide Unum with information that is reasonably required;
- the Policyholder fails to perform any of its obligations that relate to this policy;
- fewer than 10 employees are insured under a plan;
- the premium is not paid in accordance with the provisions of this policy that specify whether the Policyholder, the employee, or both, pay(s) the premiums;
- the Policyholder does not promptly report to Unum the names of any employees who are added or deleted from the eligible group;
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger, divestiture, acquisition, sale, or reorganization of the Policyholder and/or its employees; or
- the Policyholder fails to pay any portion of the premium within the 90 day **grace period.**

If Unum cancels or modifies this policy or a plan for reasons other than the Policyholder's failure to pay premium, a written notice will be delivered to the Policyholder at least 31 days prior to the cancellation date or modification date. The Policyholder may cancel this policy or a plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify the policy or plan automatically at the end of the grace period. The Policyholder is liable for premium for coverage during the grace period. The Policyholder must pay Unum all premium due for the full period each plan is in force.

The Policyholder may cancel this policy or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Policyholder and Unum agree, this policy or a plan can be cancelled on an earlier date. If Unum or the Policyholder cancels this policy or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If this policy or a plan is cancelled, the cancellation will not affect a **payable claim.**

### *WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS POLICY WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?*

We will continue the employee's coverage in accordance with the policyholder's Human Resource policy on family and medical leaves of absence if premium payments continue and the policyholder approved the employee's leave in writing.

Coverage will be continued until the end of the later of:

1. the leave period required by the federal Family and Medical Leave Act of 1993 and any amendments; or
2. the leave period required by applicable state law.

If the policyholder's Human Resource policy doesn't provide for continuation of an employee's coverage during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment.

We will not:

- apply a new waiting period;
- apply a new pre-existing conditions exclusion; or
- require evidence of insurability.

### *DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES INCLUDE:*

NAME/LOCATION (CITY AND STATE)

Refer to the contract file correspondence for a listing of names and locations approved by Unum.

Channel 12/20/2022

# CERTIFICATE SECTION

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured.  You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English.  However, a few terms and provisions are written as required by insurance law.  If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the policy (issued to the policyholder), the policy will govern.  Your coverage may be cancelled or changed in whole or in part under the terms and provisions of the policy.

The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

For purposes of effective dates and ending dates under the group policy, all days begin at 12:01 a.m. and end at 12:00 midnight at the Policyholder's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

# GENERAL PROVISIONS

### WHAT IS THE CERTIFICATE OF COVERAGE?

This certificate of coverage is a written statement prepared by Unum and may include attachments.  It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

### WHEN ARE YOU ELIGIBLE FOR COVERAGE?

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

### WHEN DOES YOUR COVERAGE BEGIN?

When your Employer pays 100% of the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage.

When you and your Employer share the cost of your coverage under a plan or when you pay 100% of the cost yourself, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or
- voluntarily cancelled your coverage and are reapplying.

An evidence of insurability form can be obtained from your Employer.

### WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

Received 12/20/2022

If you are on a **leave of absence,** and if premium is paid, you will be covered for up to 90 days following the date your leave of absence begins.

### *ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO A PLANT CLOSING?*

**Massachusetts Residents Only**
If you are not working due to a plant closing (as defined in Section 71A of Chapter 151A of the Massachusetts Insurance Statutes), and if premium is paid, you will be covered up to 90 days from the date you were no longer in active employment. If you become covered under any other group disability plan, your coverage under this policy or plan will end.

### *WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?*

Once your coverage begins, any increased or additional coverage will take effect immediately if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### *WHEN DOES YOUR COVERAGE END?*

**Non-Massachusetts Residents**
Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

**Massachusetts Residents**
Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff, leave of absence and plant closing provisions, or as noted below.

If you end employment, coverage will be extended for 31 days. But if you become eligible for any other group disability insurance or any other arrangement, this extension of coverage will end.

Received 12/20/2022

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

## WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the later of when original proof of your claim was first required to have been given; or your claim was denied; or your benefits were terminated, unless otherwise provided under federal law.

## HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty.  If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and
- make a fair adjustment of the premium.

## HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud.  Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

## DOES THE POLICY REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The policy does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

## DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For purposes of the policy, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

# LONG TERM DISABILITY

# BENEFIT INFORMATION

### HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

### HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?

You must be continuously disabled through your **elimination period**. Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 180 days.

You are not required to have a 20% or more loss in your indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period.

### CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?

Yes. If you are working while you are disabled, the days you are disabled will count toward your elimination period.

### WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive payments when we approve your claim, providing the elimination period has been met and you are disabled. We will send you a payment monthly for any period for which Unum is liable.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED?

We will follow this process to figure your payment:

LTD-BEN-1  (1/1/2020)

**All Main Campus Benefits Eligible Classified Exempt, Faculty, and All Other Unclassified Employees**
1. Multiply your monthly earnings by 70%.
2. The maximum **monthly benefit** is $5,000.
3. Compare the answer from Item 1 with the maximum monthly benefit.  The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your gross disability payment any **deductible sources of income**.

The amount figured in Item 4 is your **monthly payment**.

Your monthly payment may be reduced based on your disability earnings.

If, at any time after the elimination period, you are disabled for less than 1 month, we will send you 1/30 of your monthly payment for each day of disability and 1/30 of any additional benefits for each day of disability.

**All Full-Time Health Science Campus Benefits Eligible Executives, Contracted, Salaried Employees, and Non-Contracted Resident Physicians**
1. Multiply your monthly earnings by 60%.
2. The maximum **monthly benefit** is $10,000.
3. Compare the answer from Item 1 with the maximum monthly benefit.  The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your gross disability payment any **deductible sources of income**.

The amount figured in Item 4 is your **monthly payment**.

Your monthly payment may be reduced based on your disability earnings.

If, at any time after the elimination period, you are disabled for less than 1 month, we will send you 1/30 of your monthly payment for each day of disability and 1/30 of any additional benefits for each day of disability.

## *WILL UNUM EVER PAY MORE THAN 100% OF MONTHLY EARNINGS?*

The total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 100% of your monthly earnings.  However, if you are participating in Unum's Rehabilitation and Return to Work Assistance program, the total benefit payable to you on a monthly basis (including all benefits provided under this plan) will not exceed 110% of your monthly earnings.

## *WHAT ARE YOUR MONTHLY EARNINGS?*

"Monthly Earnings" means your gross monthly income from your Employer, including shift differential, in effect just prior to your date of disability.  It includes your total income before taxes.  It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan or flexible spending account. It does not include income received from commissions, bonuses, overtime pay or any other extra compensation or income received from sources other than your Employer.

Scanned 12/20/2022

### WHAT WILL WE USE FOR MONTHLY EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED AND WORKING?

We will send you the monthly payment if you are disabled and your monthly **disability earnings,** if any, are less than 20% of your indexed monthly earnings, due to the same sickness or injury.

If you are disabled and your monthly disability earnings are from 20% through 80% of your indexed monthly earnings, due to the same sickness or injury, Unum will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.
2. Compare the answer in Item 1 to your indexed monthly earnings.

If the answer from Item 1 is less than or equal to 100% of your indexed monthly earnings, Unum will not further reduce your monthly payment.

If the answer from Item 1 is more than 100% of your indexed monthly earnings, Unum will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.
2. Divide the answer in Item 1 by your indexed monthly earnings.  This is your percentage of lost earnings.
3. Multiply your monthly payment by the answer in Item 2.

This is the amount Unum will pay you each month.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, which may include income tax returns, which we believe are necessary to substantiate your income.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30 of your payment for each day of disability.

### HOW DO WE PROTECT YOU IF YOUR DISABILITY EARNINGS FLUCTUATE?

If your disability earnings have fluctuated from month to month, Unum may determine your benefit eligibility based on the average of your disability earnings over the most recent 3 months.

Submitted: 12/20/2022

### *WHAT ARE DEDUCTIBLE SOURCES OF INCOME?*

Unum will subtract from your gross disability payment the following deductible sources of income:

1.  The amount that you receive or are entitled to receive under:

    - a workers' compensation law.
    - an occupational disease law.
    - any other **act** or **law** with similar intent.

2.  The amount that you receive or are entitled to receive as disability income or disability retirement payments under any:

    - state compulsory benefit **act** or **law**.
    - group plan sponsored by your Employer.
    - other group insurance plan.
    - **governmental retirement system.**

3.  The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:

    - the United States Social Security Act.
    - the Canada Pension **Plan.**
    - the Quebec Pension Plan.
    - any similar plan or act.

4.  The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving retirement payments under:

    - the United States Social Security Act.
    - the Canada Pension Plan.
    - the Quebec Pension Plan.
    - any similar plan or act.

5.  The amount that you receive as retirement payments under any governmental retirement system.  Retirement payments do not include payments made at the later of age 62 or normal retirement age under your Employer's retirement plan which are attributable to contributions you made on a post tax basis to the system.

    Regardless of how retirement payments are distributed, Unum will consider payments attributable to your post tax contributions to be distributed throughout your lifetime.

    Amounts received do not include amounts rolled over or transferred to any eligible retirement plan.  Unum will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6.  The amount that you:

    - receive as disability payments under your Employer's **retirement plan.**

LTD-BEN-4  (1/1/2020)

Scanned 12/20/2022

- voluntarily elect to receive as retirement payments under your Employer's retirement plan.
- receive as retirement payments when you reach the later of age 62 or normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefit which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefit under the plan will also be considered as a retirement benefit.

Regardless of how the retirement funds from the retirement plan are distributed, Unum will consider your and your Employer's contributions to be distributed simultaneously throughout your lifetime.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Unum will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

7. The amount that you receive under the mandatory portion of any "no fault" motor vehicle **plan**.

8. The amount that you receive under a **salary continuation** or **accumulated sick leave** plan.

9. The amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

With the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security retirement income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

## WHAT ARE NOT DEDUCTIBLE SOURCES OF INCOME?

Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:

- 401(k) plans
- profit sharing plans
- thrift plans
- tax sheltered annuities
- stock ownership plans
- non-qualified plans of deferred compensation
- pension plans for partners
- military pension and disability income plans
- credit disability insurance
- franchise disability income plans
- a retirement plan from another Employer

Submitted: 12/20/2022

- individual retirement accounts (IRA)
- individual disability income plans

### WHAT IF SUBTRACTING DEDUCTIBLE SOURCES OF INCOME RESULTS IN A ZERO BENEFIT? (Minimum Benefit)

The minimum monthly payment is the greater of:

- $100; or
- 10% of your gross disability payment.

Unum may apply this amount toward an outstanding overpayment.

### WHAT HAPPENS WHEN YOU RECEIVE A COST OF LIVING INCREASE FROM DEDUCTIBLE SOURCES OF INCOME?

Once Unum has subtracted any deductible source of income from your gross disability payment, Unum will not further reduce your payment due to a cost of living increase from that source.

### WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?

When we determine that you may qualify for benefits under Item(s) 1, 2 and 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amounts if such benefits:

- have not been awarded; and
- have not been denied; or
- have been denied and the denial is being appealed.

Your Long Term Disability payment will NOT be reduced by the estimated amount if you:

- apply for the disability payments under Item(s) 1, 2 and 3 in the deductible sources of income section and appeal your denial to all administrative levels Unum feels are necessary; and
- sign Unum's payment option form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or
- that benefits have been denied and all appeals Unum feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

Channel 12/20/2022

### *HOW LONG WILL UNUM CONTINUE TO SEND YOU PAYMENTS?*

Unum will send you a payment each month up to the **maximum period of payment**. Your maximum period of payment is based on your age at disability as follows:

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than Age 62 | To Social Security Normal Retirement Age |
| Age 62 | 60 months |
| Age 63 | 48 months |
| Age 64 | 42 months |
| Age 65 | 36 months |
| Age 66 | 30 months |
| Age 67 | 24 months |
| Age 68 | 18 months |
| Age 69 or older | 12 months |

| Year of Birth | Social Security Normal Retirement Age |
|---|---|
| 1937 or before | 65 years |
| 1938 | 65 years 2 months |
| 1939 | 65 years 4 months |
| 1940 | 65 years 6 months |
| 1941 | 65 years 8 months |
| 1942 | 65 years 10 months |
| 1943-1954 | 66 years |
| 1955 | 66 years 2 months |
| 1956 | 66 years 4 months |
| 1957 | 66 years 6 months |
| 1958 | 66 years 8 months |
| 1959 | 66 years 10 months |
| 1960 and after | 67 years |

### *WHEN WILL PAYMENTS STOP?*

We will stop sending you payments and your claim will end on the earliest of the following:

- during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** and you do not;
- after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis and you do not;
- if you are working and your monthly disability earnings exceed 80% of your indexed monthly earnings, the date your earnings exceed 80%;
- the end of the maximum period of payment;
- the date you are no longer disabled under the terms of the plan, unless you are eligible to receive benefits under Unum's Rehabilitation and Return to Work Assistance program;
- the date you fail to submit proof of continuing disability;
- after 12 months of payments if you are considered to reside outside the United States or Canada.  You will be considered to reside outside these countries when you have been outside the United States or Canada for a total period of 6 months or more during any 12 consecutive months of benefits;
- the date you die.

Received 12/20/2022

### WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?

The lifetime cumulative maximum benefit period for all disabilities due to **mental illness** and disabilities based primarily on **self-reported symptoms** is 24 months. Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:

- are not continuous; and/or
- are not related.

However, Unum will send you payments beyond the 24 month period if you meet one of these conditions:

1. If you are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. If you are not confined to a hospital or institution but become confined for a period of at least 14 days within 90 days after the 24 month period for which you have received payments, Unum will send payments during the length of the confinement.

Under no circumstances will Unum pay beyond the maximum period of payment as indicated in the **BENEFITS AT A GLANCE** section of your policy.

Unum will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

### WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries.
- active participation in a riot.
- loss of a professional license, occupational license or certification.
- attempt to commit or commission of a crime.
- pre-existing condition.

Scanned 12/20/2022

Your plan will not cover a disability due to war, declared or undeclared, or any act of war.

Unum will not pay a benefit for any period of disability during which you are incarcerated.

## WHAT IS A PRE-EXISTING CONDITION?

You have a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; and
- the disability begins in the first 12 months after your effective date of coverage.

## WHAT HAPPENS IF YOU RETURN TO WORK FULL TIME WITH THE POLICYHOLDER AND YOUR DISABILITY OCCURS AGAIN?

If you have a **recurrent disability**, Unum will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under the plan for the period between the end of your prior claim and your recurrent disability; and
- your recurrent disability occurs within 6 months from the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim and will be treated as a continuation of that disability.

Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the policy provisions, including the elimination period.

If you become entitled to payments under any other group long term disability plan, you will not be eligible for payments under the Unum plan.

# LONG TERM DISABILITY

# OTHER BENEFIT FEATURES

### *WHAT BENEFITS WILL BE PROVIDED TO YOU OR YOUR FAMILY IF YOU DIE OR ARE TERMINALLY ILL? (Survivor Benefit)*

When Unum receives proof that you have died, we will pay your **eligible survivor** a lump sum benefit equal to 3 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and
- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate, unless there is none.  In this case, no payment will be made.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

You may receive your 3 month survivor benefit prior to your death if you have been diagnosed as terminally ill.

We will pay you a lump sum amount equal to 3 months of your gross disability payment if:

- you have been diagnosed with a terminal illness or condition;
- your life expectancy has been reduced to less than 12 months; and
- you are receiving monthly payments.

Your right to exercise this option and receive payment is subject to the following:

- you must make this election in writing to Unum; and
- your physician must certify in writing that you have a terminal illness or condition and your life expectancy has been reduced to less than 12 months.

This benefit is available to you on a voluntary basis and will only be payable once.

If you elect to receive this benefit prior to your death, no 3 month survivor benefit will be payable upon your death.

### *WHAT IF YOU ARE NOT IN ACTIVE EMPLOYMENT WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM? (Continuity of Coverage)*

When the plan becomes effective, Unum will provide coverage for you if:

- you are not in active employment because of a sickness or injury; and
- you were covered by the prior policy.

Your coverage is subject to payment of premium.

Your payment will be limited to the amount that would have been paid by the prior carrier.  Unum will reduce your payment by any amount for which your prior carrier is liable.

### WHAT IF YOU HAVE A DISABILITY DUE TO A PRE-EXISTING CONDITION WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM? (Continuity of Coverage)

Unum may send a payment if your disability results from a pre-existing condition if, you were:

- in active employment and insured under the plan on its effective date; and
- insured by the prior policy at the time of change.

In order to receive a payment you must satisfy the pre-existing condition provision under:

1. the Unum plan; or
2. the prior carrier's plan, if benefits would have been paid had that policy remained in force.

If you do not satisfy Item 1 or 2 above, Unum will not make any payments.

If you satisfy Item 1, we will determine your payments according to the Unum plan provisions.

If you only satisfy Item 2, we will administer your claim according to the Unum plan provisions.  However, your payment will be the lesser of:

a. the monthly benefit that would have been payable under the terms of the prior plan if it had remained inforce; or
b. the monthly payment under the Unum plan.

Your benefits will end on the earlier of the following dates:

1. the end of the maximum benefit period under the plan; or
2. the date benefits would have ended under the prior plan if it had remained in force.

### HOW CAN UNUM'S REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM HELP YOU RETURN TO WORK?

Unum has a vocational Rehabilitation and Return to Work Assistance program available to assist you in returning to work.  We will determine whether you are eligible for this program.  In order to be eligible for rehabilitation services and benefits, you must be medically able to engage in a return to work program.

Your claim file will be reviewed by one of Unum's rehabilitation professionals to determine if a rehabilitation program might help you return to gainful employment. As your file is reviewed, medical and vocational information will be analyzed to determine an appropriate return to work program.

We will make the final determination of your eligibility for participation in the program.

We will provide you with a written Rehabilitation and Return to Work Assistance plan developed specifically for you.

Scanned 12/20/2022

The rehabilitation program may include, but is not limited to, the following services and benefits:

- coordination with your Employer to assist you to return to work;
- adaptive equipment or job accommodations to allow you to work;
- vocational evaluation to determine how your disability may impact your employment options;
- job placement services;
- resume preparation;
- job seeking skills training; or
- education and retraining expenses for a new occupation.

### WHAT ADDITIONAL BENEFITS WILL UNUM PAY WHILE YOU PARTICIPATE IN A REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM?

We will pay an additional disability benefit of 10% of your gross disability payment to a maximum benefit of $1,000 per month.

This benefit is not subject to policy provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income. However, the Total Benefit Cap will apply.

In addition, we will make monthly payments to you for 3 months following the date your disability ends if we determine you are no longer disabled while:

- you are participating in the Rehabilitation and Return to Work Assistance program; and
- you are not able to find employment.

This benefit payment may be paid in a lump sum.

### WHEN WILL REHABILITATION AND RETURN TO WORK ASSISTANCE BENEFITS END?

Benefits for the Rehabilitation and Return to Work Assistance program will end on the earliest of the following dates:

- the date Unum determines that you are no longer eligible to participate in Unum's Rehabilitation and Return to Work Assistance program; or
- any other date on which monthly payments would stop in accordance with this plan.

### WHAT ADDITIONAL BENEFIT IS AVAILABLE FOR DEPENDENT CARE EXPENSES TO ENABLE YOU TO PARTICIPATE IN UNUM'S REHABILITATION AND RETURN TO WORK ASSISTANCE PROGRAM?

While you are participating in Unum's Rehabilitation and Return to Work Assistance program, we will pay a Dependent Care Expense Benefit when you are disabled and you:

1. are incurring expenses to provide care for a child under the age of 15; and/or
2. start incurring expenses to provide care for a child age 15 or older or a family member who needs personal care assistance.

Received 12/20/2022

.

The payment of the Dependent Care Expense Benefit will begin immediately after you start Unum's Rehabilitation and Return to Work Assistance program.

Our payment of the Dependent Care Expense Benefit will:

1. be $350 per month, per **dependent**; and
2. not exceed $1,000 per month for all dependent care expenses combined.

To receive this benefit, you must provide satisfactory proof that you are incurring expenses that entitle you to the Dependent Care Expense Benefit.

Dependent Care Expense Benefits will end on the earlier of the following:

1. the date you are no longer incurring expenses for your dependent;
2. the date you no longer participate in Unum's Rehabilitation and Return to Work Assistance program; or
3. any other date payments would stop in accordance with this plan.

# OTHER SERVICES

These services are also available from us as part of your Unum Long Term Disability plan.

### HOW CAN UNUM HELP YOUR EMPLOYER IDENTIFY AND PROVIDE WORKSITE MODIFICATION?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Unum.

When this occurs, Unum will reimburse your Employer for the cost of the modification, up to the greater of:

- $1,000; or
- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### HOW CAN UNUM'S SOCIAL SECURITY CLAIMANT ADVOCACY PROGRAM ASSIST YOU WITH OBTAINING SOCIAL SECURITY DISABILITY BENEFITS?

In order to be eligible for assistance from Unum's Social Security claimant advocacy program, you must be receiving monthly payments from us. Unum can provide expert advice regarding your claim and assist you with your application or appeal.

Receiving Social Security benefits may enable:

- you to receive Medicare after 24 months of disability payments;
- you to protect your retirement benefits; and
- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;
- obtaining medical and vocational evidence; and
- reimbursing pre-approved case management expenses.

Scanned 12/20/2022

# GLOSSARY

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation.  You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**DEDUCTIBLE SOURCES OF INCOME** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled.  This income will be subtracted from your gross disability payment.

**DEPENDENT** means:

- your child(ren) under the age of 15; and
- your child(ren) age 15 or over or a family member who requires personal care assistance.

**DISABILITY EARNINGS** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your **maximum capacity**.

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum.

**EMPLOYEE** means a person who is in active employment in the United States with the Employer.

**EMPLOYER** means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.

**EVIDENCE OF INSURABILITY** means a statement of your medical history which Unum will use to determine if you are approved for coverage.  Evidence of insurability will be at Unum's expense.

**GAINFUL OCCUPATION** means an occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

80% of your indexed monthly earnings, if you are working; or
60% of your indexed monthly earnings, if you are not working.

**GOVERNMENTAL RETIREMENT SYSTEM** means a plan which is part of any federal, state, county, municipal or association retirement system, including but not limited to, a state teachers retirement system, public employees retirement system or other similar retirement system for state or local government employees providing for the payment of retirement and/or disability benefits to individuals.

RECEIVED

12/20/2022

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**GROSS DISABILITY PAYMENT** means the benefit amount before Unum subtracts deductible sources of income and disability earnings.

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INDEXED MONTHLY EARNINGS** means your monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-U) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-U.

Indexing is only used as a factor in the determination of the percentage of lost earnings while you are disabled and working and in the determination of gainful occupation.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan.

**INSURED** means any person covered under a plan.

**LAW, PLAN OR ACT** means the original enactments of the law, plan or act and all amendments.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

**MAXIMUM CAPACITY** means, based on your restrictions and limitations:

- during the first 24 months of disability, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.
- beyond 24 months of disability, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

**MAXIMUM PERIOD OF PAYMENT** means the longest period of time Unum will make payments to you for any one period of disability.

Scanned 12/20/2022

**MENTAL ILLNESS** means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability.  Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress.  If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a disability.

**MONTHLY BENEFIT** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**MONTHLY EARNINGS** means your gross monthly income from your Employer as defined in the plan.

**MONTHLY PAYMENT** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**PART-TIME BASIS** means the ability to work and earn between 20% and 80% of your indexed monthly earnings.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the policy.

**PHYSICIAN** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Unum will not recognize you, or your spouse, children, parents or siblings as a physician for a claim that you send to us.

**PLAN** means a line of coverage under the policy.

**POLICYHOLDER** means the Employer to whom the policy is issued.

**PRE-EXISTING CONDITION** means a condition for which you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines for your condition during the given period of time as stated in the plan.

**RECURRENT DISABILITY** means a disability which is:

- caused by a worsening in your condition; and
- due to the same cause(s) as your prior disability for which Unum made a disability payment.

Scanned 12/20/2022

**REGULAR CARE** means:

- you personally visit a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for your disabling condition(s) by a physician whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

**RETIREMENT PLAN** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions. Retirement Plan does not include any plan which is part of any governmental retirement system.

**SALARY CONTINUATION OR ACCUMULATED SICK LEAVE** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Policy. This continued payment must be part of an established plan maintained by your Employer for the benefit of all employees covered under the Policy. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account in calculating your monthly payment.

**SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**SICKNESS** means an illness or disease. Disability must begin while you are covered under the plan.

**SURVIVOR, ELIGIBLE** means your spouse, if living; otherwise your children under age 25 equally.

**TOTAL COVERED PAYROLL** means the total amount of monthly earnings for which employees are insured under this plan.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE, US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an employee who is eligible for Unum coverage.

Scanned 12/20/2022

## LONG TERM DISABILITY/SHORT TERM DISABILITY

### THE FOLLOWING NOTICES AND CHANGES TO YOUR COVERAGE ARE REQUIRED BY CERTAIN STATES.  PLEASE READ CAREFULLY.

State variations apply and are subject to change.  Consult your employer or plan administrator for the most current state provisions that may apply to you.

If you have a complaint about your insurance you may contact Unum at 1-800-321-3889, or the department of insurance in your state of residence. Links to the websites of each state department of insurance can be found at www.naic.org.

Si usted tiene alguna queja acerca de su seguro puede comunicarse con Unum  al 1-800-321-3889, o al departamento de seguros de su estado de residencia.
Puede encontrar enlaces a los sitios web de los departamentos de seguros de cada estado en www.naic.org.

The states of **Florida and Maryland** require us to advise residents of those states that if your Certificate was issued in a jurisdiction other than the state in which you reside, it may not provide all of the benefits required by the laws of your residence state.

Full effect will be given to your state's civil union, domestic partner and same sex marriage laws to the extent they apply to you under a group insurance policy issued in another state.

**If you are a resident of one of the states noted below, and the provisions referenced below appear in your Certificate in a form less favorable to you as an insured, they are amended as follows:**

---

### For residents of Colorado:

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

The **WHAT *DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?*** provision in the **BENEFIT INFORMATION** section of the policy and in the **SPOUSE DISABILITY BENEFIT** provision in the **OTHER BENEFIT FEATURES** section of the policy is amended to provide that any exclusion for disabilities caused by, contributed to by, or resulting from your intentionally self-inflicted injuries will be applied only if you were sane when the injury was inflicted.

### For residents of Louisiana:

The *HOW CAN STATEMENTS IN YOUR APPLICATION FOR THIS COVERAGE BE USED?* provision in the **GENERAL PROVISIONS** section of the policy is amended to provide that, except for fraud, misstatements made in your application cannot be used to reduce or deny coverage if your coverage has been in force for at least 3 years.

**For residents of Minnesota:**

The *HOW CAN STATEMENTS IN YOUR APPLICATION FOR THIS COVERAGE BE USED?* provision in the **GENERAL PROVISIONS** section of the policy is amended to provide that, except for fraud, misstatements made in your application cannot be used to reduce or deny coverage if your coverage has been in force for at least 2 years.

The *WHAT ARE DEDUCTIBLE SOURCES OF INCOME?* provision in the **BENEFIT INFORMATION** section of the policy is amended so that deductible sources of income will not include any amounts you receive as mandatory portions of any "no fault" motor vehicle plan or any amounts received from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise, until after you have been fully compensated from this other source.

The **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy will be applied by deleting the phrase "or you had symptoms for which an ordinarily prudent person would have consulted a health care provider."

If your coverage includes the **Spouse Disability Rider** benefit the exclusions for mental illness and alcoholism applicable to the rider are removed.

**For residents of Montana:**

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

The definition of pre-existing condition found in the provisions *WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?* and *WHAT DISABILITIES ARE NOT COVERED FOR A COST OF LIVING INCREASE?* in the **BENEFIT INFORMATION** section of the policy, is amended to limit a pre-existing condition to "a sickness or injury for which you received medical advice or treatment from a provider of health care services or medical advice or treatment was recommended by a provider of health care services" during the time period specified in the policy.

**For residents of New Hampshire:**

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

The *HOW CAN STATEMENTS IN YOUR APPLICATION FOR THIS COVERAGE BE USED?* provision in the **GENERAL PROVISIONS** section of the policy is amended to provide that, except for fraud, misstatements made in your application cannot be used to reduce or deny coverage if your coverage has been in force for at least 2 years.

GDIS-STATEVAR-2 (1/1/2020)

Scanned 12/20/2022

### For residents of North Carolina:

The definition of pre-existing condition found in the provisions *WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?* and *WHAT DISABILITIES ARE NOT COVERED FOR A COST OF LIVING INCREASE?* in the **BENEFIT INFORMATION** section of the policy, is amended by removing any reference to "symptoms arising from the sickness or injury, whether diagnosed or not."

### For residents of South Carolina:

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

The *WHAT IF YOU HAVE A DISABILITY DUE TO A PRE-EXISTING CONDITION WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM?* provision in the **BENEFIT INFORMATION** section of the policy, is amended to provide that Unum will credit the pre-existing condition period you satisfied under another similar group disability policy if you were covered under the prior policy within 30 days of being effective under this policy and you applied for this coverage when you first became eligible.

### For residents of South Dakota:

The **Pre-existing Condition** limitation in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** limitation in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

### For residents of Texas:

The *HOW CAN STATEMENTS IN YOUR APPLICATION FOR THIS COVERAGE BE USED?* provision in the **GENERAL PROVISIONS** section of the policy is amended to provide that, except for fraud, misstatements made in your application cannot be used to reduce or deny coverage if your coverage has been in force for at least 2 years.

The **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy will be applied by deleting the phrase "or you had symptoms for which an ordinarily prudent person would have consulted a health care provider."

### For residents of Utah:

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it

will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

The *HOW CAN STATEMENTS IN YOUR APPLICATION FOR THIS COVERAGE BE USED?* provision in the **GENERAL PROVISIONS** section of the policy is amended to provide that, except for fraud, misstatements made in your application cannot be used to reduce or deny coverage if your coverage has been in force for at least 2 years.

### For residents of Vermont:

If the policy is marketed in Vermont, the policyholder has a principal office or is organized in Vermont, or there are more than 25 Vermont residents insured under the policy:

The limitation specifying the number of months payments will be made for a disability caused by a mental and nervous condition is removed.

The **MINIMUM HOURS REQUIREMENT** stated in the **BENEFITS AT A GLANCE** section of the policy is reduced to 17.5 hours per week.

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

### For residents of West Virginia:

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

### For residents of Wisconsin:

The **Pre-existing Condition** exclusion in the **OTHER FEATURES** provision of the **BENEFITS AT A GLANCE** section of the policy is amended so that if the last number is greater than 12 months, it is reduced to 12 months and any **Pre-existing Condition** exclusion in the **BENEFIT INFORMATION** section of the policy is amended so that it will be applied only if the disability begins in the first 12 months after the insured's effective date of coverage for the applicable benefit, or such shorter time as provided in the policy.

**Additional Claim and Appeal Information**
**Relative to policy issued by Unum Life Insurance Company of America ("Unum")**

## APPLICABILITY OF ERISA

If the policy provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. Whether a Plan is governed by ERISA is determined by a court, however, your Employer may have information related to ERISA applicability. If ERISA applies, the following items constitute the Plan: the additional information contained in this document, the policy, including your certificate of coverage, and any additional summary plan description information provided by the Plan Administrator. Benefit determinations are controlled exclusively by the policy, your certificate of coverage, and the information in this document.

## HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate. To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer. If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

## CLAIMS PROCEDURES

Unum will give you notice of the decision no later than 45 days after the claim is filed. This time period may be extended twice by 30 days if Unum both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies you of the circumstances requiring the extension of time and the date by which Unum expects to render a decision. If such an extension is necessary due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days within which to provide the specified information. If you deliver the requested information within the time specified, any 30 day extension period will begin after you have provided that information. If you fail to deliver the requested information within the time specified, Unum may decide your claim without that information.

If your claim for benefits is wholly or partially denied, the notice of adverse benefit determination under the Plan will:

- state the specific reason(s) for the determination;

- reference specific Plan provision(s) on which the determination is based;

- describe additional material or information necessary to complete the claim and why such information is necessary;

- describe Plan procedures and time limits for appealing the determination, and your right to obtain information about those procedures and the right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal; and

ADDLINFO-1  (1/1/2020)

- disclose any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or state that such information will be provided free of charge upon request).

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

You have 180 days from the receipt of notice of an adverse benefit determination to file an appeal. Requests for appeals should be sent to the address specified in the claim denial. A decision on review will be made not later than 45 days following receipt of the written request for review. If Unum determines that special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). Unum will notify you in writing if an additional 45 day extension is needed.

If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days to provide the specified information. If you deliver the requested information within the time specified, the 45 day extension of the appeal period will begin after you have provided that information. If you fail to deliver the requested information within the time specified, Unum may decide your appeal without that information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination. No deference will be afforded to the initial determination.

The review will be conducted by Unum and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on the grounds of a medical judgment, Unum will consult with a health professional with appropriate training and experience. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate. If the advice of a medical or vocational expert was obtained by the Plan in connection with the denial of your claim, Unum will provide you with the names of each such expert, regardless of whether the advice was relied upon.

A notice that your request on appeal is denied will contain the following information:

- the specific reason(s) for the determination;

- a reference to the specific Plan provision(s) on which the determination is based;

- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);

Scanned 12/20/2022

- a statement describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the decision;

- the statement that you are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to the determination; and

- the statement that "You or your Plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor·Office and your State insurance regulatory agency".

Notice of the determination may be provided in written or electronic form.  Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of disability earnings or deductible sources of income from a third party.  This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the policy.  Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

**Addendum to the "Additional Summary Plan Description Information"
included with your certificate of coverage or policy
and effective for claims filed on or after April 1, 2018.**

The regulations governing ERISA disability claims and appeals have been amended. The amended regulations apply to disability claims filed on or after April 1, 2018. To the extent the Additional Summary Plan Description Information included with your certificate of coverage or policy conflicts with these new requirements, these new rights and procedures will apply.

These new rights and procedures include:

Any cancellation or discontinuance of your disability coverage that has a retroactive effect will be treated as an adverse benefit determination, except in the case of failure to timely pay required premiums or contributions toward the cost of coverage.

If you live in a county with a significant population of non-English speaking persons, the plan will provide, in the non-English language(s), a statement of how to access oral and written language services in those languages.

For any adverse benefit determination, you will be provided with an explanation of the basis for disagreeing or not following the views of: (1) health care professionals who have treated you or vocational professionals who have evaluated you; (2) the advice of medical or vocational professionals obtained on behalf of the plan; and (3) any disability determination made by the Social Security Administration regarding you and presented to the plan by you.

For any adverse benefit determination, you will be given either the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making that decision, or a statement that such rules, etc. do not exist.

Prior to a final decision being made on an appeal, you will have the opportunity to review and respond to any new or additional rationale or evidence considered, relied upon, or generated by the plan in connection with your claim.

If an adverse benefit determination is upheld on appeal, you will be given notice of any applicable contractual limitations period that applies to your right to bring legal proceedings and the calendar date on which that period expires.

Should the plan fail to establish or follow ERISA required disability claims procedures, you may be entitled to pursue legal remedies under section 502(a) of the Act without exhausting your administrative remedies, as more completely set forth in section 503-1(l).

Scanned 12/20/2022

# Our Commitment to Privacy

We understand your privacy is important. We value our relationship with you and are committed to protecting the confidentiality of nonpublic personal information (NPI). This notice explains why we collect NPI, what we do with NPI and how we protect your privacy.

## COLLECTING INFORMATION

We collect NPI about our customers to provide them with insurance products and services. This may include telephone number, address, date of birth, occupation, income and health history. We may receive NPI from your applications and forms, medical providers, other insurers, employers, insurance support organizations and service providers.

## SHARING INFORMATION

We share the types of NPI described above primarily with people who perform insurance, business and professional services for us, such as helping us pay claims and detect fraud. We may share NPI with medical providers for insurance and treatment purposes. We may share NPI with an insurance support organization. The organization may retain the NPI and disclose it to others for whom it performs services. In certain cases, we may share NPI with group policyholders for reporting and auditing purposes. We may share NPI with parties to a proposed or final sale of insurance business or for study purposes. We may also share NPI when otherwise required or permitted by law, such as sharing with governmental or other legal authorities. When legally necessary, we ask your permission before sharing NPI about you. Our practices apply to our former, current and future customers.

Please be assured we do not share your health NPI to market any product or service. We also do not share any NPI to market non-financial products and services. For example, we do not sell your name to catalog companies.

The law allows us to share NPI as described above (except health information) with affiliates to market financial products and services. The law does not allow you to restrict these disclosures. We may also share with companies that help us market our insurance products and services, such as vendors that provide mailing services to us. We may share with other financial institutions to jointly market financial products and services. When required by law, we ask your permission before we share NPI for marketing purposes.

When other companies help us conduct business, we expect them to follow applicable privacy laws. We do not authorize them to use or share NPI except when necessary to conduct the work they are performing for us or to meet regulatory or other governmental requirements.

Unum companies, including insurers and insurance service providers, may share NPI about you with each other. The NPI might not be directly related to our transaction or experience with you. It may include financial or other personal information such as employment history. Consistent with the Fair Credit Reporting Act, we ask your permission before sharing NPI that is not directly related to our transaction or experience with you.

## COVERAGE DECISIONS

If we decide not to issue coverage to you, we will provide you with the specific reason(s) for our decision. We will also tell you how to access and correct certain NPI.



## ACCESS TO INFORMATION

You may request access to certain NPI we collect to provide you with insurance products and services. You must make your request in writing and send it to the address below. The letter should include your full name, address, telephone number and policy number if we have issued a policy. If you request, we will send copies of the NPI to you. If the NPI includes health information, we may provide the health information to you through a health care provider you designate. We will also send you information related to disclosures. We may charge a reasonable fee to cover our copying costs.

This section applies to NPI we collect to provide you with coverage. It does not apply to NPI we collect in anticipation of a claim or civil or criminal proceeding.

## CORRECTION OF INFORMATION

If you believe the NPI we have about you is incorrect, please write to us. Your letter should include your full name, address, telephone number and policy number if we have issued a policy. Your letter should also explain why you believe the NPI is inaccurate. If we agree with you, we will correct the NPI and notify you of the correction. We will also notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person.

If we disagree with you, we will tell you we are not going to make the correction. We will give you the reason(s) for our refusal. We will also tell you that you may submit a statement to us. Your statement should include the NPI you believe is correct. It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files. We will file your statement with the disputed NPI. We will include your statement any time we disclose the disputed NPI. We will also give the statement to any person designated by you if we may have disclosed the disputed NPI to that person in the past two years.

## SAFEGUARDING INFORMATION

We have physical, electronic and procedural safeguards that protect the confidentiality and security of NPI. We give access only to employees who need to know the NPI to provide insurance products or services to you.

## CONTACTING US

For additional information about Unum's commitment to privacy and to view a copy of our HIPAA Privacy Notice, please visit unum.com/privacy or coloniallife.com. You may also write to: Privacy Officer, Unum, 2211 Congress Street, C476, Portland, Maine 04122.

*We reserve the right to modify this notice. We will provide you with a new notice if we make material changes to our privacy practices.*

*Unum is providing this notice to you on behalf of the following insuring companies: Unum Life Insurance Company of America, Unum Insurance Company, First Unum Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, Colonial Life & Accident Insurance Company and The Paul Revere Life Insurance Company.*

Copyright 2015 Unum Group. All rights reserved. Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries.

MK-1883 (09/15)

GLB-2 (1/1/2020)

Scanned 12/20/2022

### NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE OHIO LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Ohio who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Ohio Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations.  If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.  The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however.  And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Ohio Life and Health Insurance Guaranty Association may not provide coverage for this policy.  If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Ohio.  You should not rely on coverage by the Ohio Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.  You should check with your insurance company representative to determine if you are only covered in part or not covered at all.**

**Insurance companies or their agents are required by law to give or send you this notice.  <u>However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.</u>**

**Ohio Life and Health Insurance Guaranty Association
5005 Horizons Drive, Suite 200
Columbus, OH 43220**

**Ohio Department of Insurance
50 West Town Street
Third Floor, Suite 300
Columbus, OH  43215**

The state law that provides for this safety-net coverage is called the Ohio Life and Health Insurance Guaranty Association Act.  On the back of this page is a brief summary of this law's coverages, exclusions and limits.  This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

### COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in Ohio and hold a life or health insurance contract, annuity contract, unallocated annuity contract, if they are insured under a group insurance contract, issued by a member insurer, or if they are the payee or beneficiary of a

structured settlement annuity contract. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- their policy was issued by a medical, health or dental care corporation, an HMO, a fraternal benefit society, a mutual protective association or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contract holder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000, except as specified below, no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. The association will not pay more than $100,000 in cash surrender values, $500,000 in major medical insurance benefits, $300,000 in disability or long-term care insurance benefits, $100,000 in other health insurance benefits, $250,000 in present value of annuities, or $300,000 in life insurance death benefits. Again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages the association will pay a maximum of $300,000, except for coverage involving major medical insurance benefits, for which the maximum of all coverages is $500,000.

***Note to benefit plan trustees or other holders of unallocated annuities (G/Cs, DA Cs, etc.) covered by the act:*** For unallocated annuities that fund governmental retirement plans under Sec. 401, 403(b) or 457 of the Internal Revenue Code, the limit is $250,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual, except as noted above. For covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contractholder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

**For more information about the Ohio Life & Health Insurance Guaranty Association, visit our website at: olhiga.org.**



# Disability
## Allowance

For members enrolled in the
**Defined Benefit Plan**

Exhibit **2022|2023**

Scanned 12/20/2022

# Table of Contents

Is Disability Right For You? ........................................... 1
Disability allowance overview ....................................... 2
Eligibility requirements ................................................ 2
   Medical criteria ..................................................... 3
How to apply for disability allowance .......................... 3
   Benefit effective date .......................................... 5
   Important considerations ...................................... 6
Estimating a disability allowance benefit .................... 7
   Estimate your benefit online ................................ 7
   Estimate your benefit using this brochure ............ 7
   Contact STRS Ohio directly ................................... 7
Length of disability allowance benefits ....................... 8
Account withdrawal in lieu of benefits ....................... 10
   Account withdrawal restrictions .......................... 10
   Monthly payments vs. account withdrawal ........... 11
   Spousal consent on account withdrawal .............. 11
   Withdrawal amount ............................................ 12
   Items to consider ............................................... 12
   Important tax considerations ............................... 13
   Account withdrawal procedures ........................... 13
Purchasing service credit ............................................ 14
Taxation of disability benefits .................................... 14
   Federal income tax ............................................. 14
   State/Local income tax ....................................... 14
   Taxable income .................................................. 14
Health care coverage .................................................. 15
   Access to health care coverage ........................... 15
   Dental and vision coverage ................................. 16
Other important benefits ............................................ 17
   Survivor benefits ................................................ 17
   Cost-of-living adjustment (COLA) ........................ 17
   Death benefits ................................................... 17
Employment while receiving disability benefits ........... 18
STRS Ohio Resources ................................................... 20

This brochure is a summary written in plain language for use by STRS Ohio members. It is not intended as a substitute for the Ohio Revised Code or the Ohio Administrative Code or for any state or federal law or regulation, nor will its interpretation prevail should a conflict arise between it and any law or regulation. More information may be obtained by contacting STRS Ohio toll-free at 888-227-7877.

# Is Disability Right For You?

## Considerations before applying for disability

- STRS Ohio offers two disability benefit programs (see Page 2) for members who develop a physical or mental condition that prevents them from performing their most recent job duties.

- STRS Ohio does not offer short-term or partial disability benefits.

  - The disabling injury or illness must be expected to last 12 months or more from the date STRS Ohio receives a completed Disability Application Packet.

- Review the Americans with Disabilities Act and discuss your needs with your employer to see if accommodations can be made so you can continue working.

- You cannot perform any paid or volunteer teaching services while receiving disability benefits.

- You have the option to apply for service retirement, if you meet eligibility requirements, instead of applying for disability benefits. You may resume teaching or other public service two months after service retirement.

- You may wish to continue working and seek other employment in the Ohio Public Employees Retirement System (OPERS) or the School Employees Retirement System (SERS) that can be combined with STRS Ohio at service retirement in the future.

## If you believe you are no longer physically or mentally able to teach

- Watch the *Disability Benefits* presentation (available at www.strsoh.org in the Videos section) for an overview of the application process.

- Discuss your situation with your medical specialist and have your specialist's support before applying for disability benefits.

- Speak with an STRS Ohio benefits counselor.

- See "How to apply for disability allowance" on Page 3.

Received 12/20/2022

DEFINED BENEFIT PLAN

## Disability allowance overview

STRS Ohio has two disability benefit programs for members participating in the Defined Benefit Plan — disability allowance and disability retirement.

- Teachers who became members of STRS Ohio after July 29, 1992, participate under the disability allowance program.

- Teachers who were members of STRS Ohio on or before July 29, 1992, participate in either the disability allowance or the disability retirement program. Members who chose the disability retirement program should read the *Disability Retirement* brochure for an explanation of their disability benefits.

Teachers who are also members of OPERS and/or SERS must apply for disability benefits with the retirement system where they have the most service credit. The system with the most service will determine and pay the disability benefit.

Members who are unsure of their program selection should refer to their *Annual Statement of Account* or contact STRS Ohio toll-free at 888-227-7877.

## Eligibility requirements

To qualify for disability allowance benefits, an STRS Ohio member must:

- Meet either of the following:

   — **Existing members on June 30, 2013**, must have at least 5.00 years of qualifying service credit* on account with STRS Ohio and submit a completed application packet (see Pages 3–5) within two years of the last date of contributing service with STRS Ohio, Ohio Public Employees Retirement System (OPERS) or School Employees Retirement System of Ohio (SERS).

   — **New members on or after July 1, 2013**, must have at least 10.00 years of qualifying service credit* on account with STRS Ohio and submit a

*Qualifying service credit includes earned credit with STRS Ohio, Ohio Public Employees Retirement System (OPERS) or School Employees Retirement System (SERS); restored withdrawn credit with STRS Ohio, OPERS or SERS; interrupted Ohio public service due to military service; and earned and restored credit that transfers from Ohio Police & Fire Pension Fund, Highway Patrol Retirement System or Cincinnati Retirement System.

DEFINED BENEFIT PLAN

completed application packet (see below through Page 5) within one year of the last date of earned service with STRS Ohio, OPERS or SERS.

- Not be receiving service retirement benefits.

- Have the most service credit with STRS Ohio (versus OPERS or SERS). If OPERS or SERS has the most service credit, contact the system with the most service credit for a Disability Application Packet.

In lieu of receiving monthly disability benefits from STRS Ohio, members may terminate employment and withdraw their account. For information about account withdrawal, see Pages 10–13 of this brochure.

### Medical criteria

The medical criteria for a disability allowance are:

- A disabling medical condition prevents the individual from performing his or her most recent job duties; and

- The condition is expected to last at least 12 continuous months from the date STRS Ohio receives the completed Disability Application Packet; and

- The disability must have occurred since membership began or, if you previously withdrew your account, since you returned to covered service with STRS Ohio. If your condition existed at the time you became a member, it must have increased in severity since that time as to make the condition disabling under the criteria above.

## How to apply for disability allowance

Apply for disability allowance in a timely manner to avoid exhausting sick leave before the application process is complete. If you are also contributing to OPERS and/or SERS, the application must be filed with the retirement system where you have the most service credit. Due to the number of different review processes, allow approximately four to six months for consideration of a disability application. At times, disability applicants may be asked to pursue further treatment, delaying a decision regarding approval or

Scanned 12/20/2022

DEFINED BENEFIT PLAN                                                   DEFINED BENEFIT PLAN

denial of disability benefits. Listed below and on Page 5 is a summary of the steps to follow when applying for disability allowance. For the complete application process, contact STRS Ohio toll-free at 888-227-7877 to request a Disability Application Packet. A presentation providing an overview of the application process is available in the Videos section of the STRS Ohio website.

1. Contact STRS Ohio to request a Disability Application Packet, which includes the following:

   - *Disability Benefit Application*

   - *Report by Employer*

   - *Attending Physician's Report* to be completed by a medical specialist

   - *Disability Benefit Application Checklist*

   - *Questions and Answers* booklet

2. **The following forms included in the packet must be completed and received by STRS Ohio before processing of the application begins.**

   The *Disability Benefit Application* should be completed by the applicant or someone acting on his or her behalf. The *Report by Employer* should be returned to STRS Ohio by the employer with a copy of your most recent official job description.

   *Attending Physician's Report* requirements:

   - The report must be completed by a **medical specialist** who is a non-primary care doctor of medicine (M.D.) or doctor of osteopathic medicine (D.O.).

   - The physician's medical specialty must be in an area of accepted care for your condition. For example, a neurologist for multiple sclerosis or a stroke, an oncologist for cancer, an orthopedist for degenerative joint disease or a psychiatrist for a mental condition.

   - The medical specialist must have an established therapeutic relationship with you and **personally examined** you within the last **two months** before the receipt of the complete application packet.

   Your medical specialist is also responsible for submitting medical evidence including your most recent office note including in-person examination and hospital records or test results from the last 12 months that support the disabling condition.

**Note:** You must complete the *Authorization for Release of Retirement Account Information* form and submit it to STRS Ohio before the disability application can be discussed with a family member or any other individual representing you. This form is available at www.strsoh.org.

3. An independent medical examiner chosen by STRS Ohio will examine you. Most STRS Ohio examiners are located in the Columbus, Ohio, area. STRS Ohio pays the examiner's fee, but not your travel expenses.

4. STRS Ohio's Medical Review Board may recommend a period of medical treatment for up to six months before a recommendation is made to the State Teachers Retirement Board.

5. The Medical Review Board evaluates your medical records and makes a recommendation to the Retirement Board.

6. If the Medical Review Board recommends approval of the application, you must stop working by the end of that month.

7. The Retirement Board determines whether the application for disability benefits is approved.

8. STRS Ohio notifies you of the Retirement Board's decision.

9. If the disability application is approved, STRS Ohio requests final average salary* (FAS) and service credit information from your employer to calculate the benefit payments. (Allow at least 90 days from the approval date to receive the first benefit payment.)

10. If the disability application is not approved, information about the appeal process is mailed to you.

### Benefit effective date

If approved, the benefit will become effective on the first day of the month following the latter of:

- The last day for which any compensation was paid, or

- The date on which your most recent complete Disability Application Packet was received by STRS Ohio.

*Final average salary (FAS) is the average of your five highest years of Ohio public earnings.

RECEIVED 12/20/2022

A disability application is considered complete when all four of the following items have been received by STRS Ohio: *Disability Benefit Application, Attending Physician's Report* from a medical specialist that was completed based on an in-person exam within the last two months and includes medical evidence, most recent official job description from last employer and *Report by Employer*.

### Important considerations

- Members applying for disability benefits **should not resign.** A member who was under contract when disability benefits were granted and who has not resigned shall be considered on a leave of absence from his or her position during the first five years following the effective date of disability benefits.

- If disability benefits are approved by the Retirement Board and accepted by the member, it is the member's option whether to use remaining sick leave; however, the employer may have guidelines the member must follow.

- Benefit payments begin on the first day of a month; they are not prorated for partial months. Benefit payments are direct deposited into the banking institution of the recipient's choice.

- Disability benefit recipients are subject to annual medical examinations including requests for medical evidence. These examinations may require travel to Columbus, Ohio. STRS Ohio pays the examiner's fee, but not the member's travel expenses.

- As a condition for receiving a disability benefit, a recipient may be required to agree in writing to obtain medical treatment recommended by the Medical Review Board. If the recipient fails to obtain required treatment or to submit required medical reports, disability benefits will be terminated.

- Disability benefit recipients who have received a benefit for at least 14 months must annually complete a *Disability Statement of Employment and Earnings*. STRS Ohio will notify disability recipients when their statement is available for completion in their Online Personal Account. (To register for an Online Personal Account, go to www.strsoh.org and click "Register" at the top of

the home page.) Disability recipients are required to report any employment, earnings and volunteer service performed while receiving disability benefits. If this information is not submitted, disability benefits and health care coverage, if applicable, will be terminated.

## Estimating a disability allowance benefit

To estimate disability allowance benefits, you can use the STRS Ohio website, this brochure or contact us directly.

### Estimate your benefit online

To calculate a disability allowance estimate, log in to your Online Personal Account at www.strsoh.org and access a benefit estimate calculator that will use your personal account information. You may also obtain a disability allowance estimate by entering your personal account details in the calculator available at www.strsoh.org under Resources.

### Estimate your benefit using this brochure

To estimate the amount of disability allowance benefit, complete the following:

| | | |
|---|---|---|
| 1. | Enter total years of Ohio service credit | |
| 2. | Multiply years on Line 1 by 2.2%, enter results on Line 3 | × .022 |
| 3. | This is your disability benefit formula percentage (minimum = 45% of FAS) (maximum = 60% of FAS) | % |
| 4. | Enter your FAS | $ |
| 5. | Multiply the FAS on Line 4 by the percentage on Line 3 to find your annual disability benefit | $ |
| | + 12 = monthly | $ |

### Contact STRS Ohio directly

If you would like STRS Ohio to calculate your estimate, call the Member Services Center toll-free at 888-227-7877.

## Length of disability allowance benefits

Disability benefits terminate:

- If the recipient performs any teaching service in a public or private setting, school or nonschool setting, on a volunteer basis or for compensation, in or outside the state of Ohio (see Page 18);

- If the recipient's disability benefit was on a combined basis with OPERS and/or SERS and the recipient becomes employed in a position covered by one of those systems;

- At the request of the recipient;

- If a medical reexamination shows the member is no longer disabled;

- If the recipient is not following an agreed-upon treatment plan or does not submit required medical reports;

- If the recipient has not submitted the *Disability Statement of Employment and Earnings* noted on Page 6; or

- At age 65 or after a specific benefit period.

Disability benefits terminate at age 65 if the benefit began before age 60. The following chart shows how long benefits may continue for members who were age 60 or older when disability benefits began.

| Age at Effective Date of Disability | Benefit Period |
| --- | --- |
| 60 or 61 | 60 months |
| 62 or 63 | 48 months |
| 64 or 65 | 36 months |
| 66, 67 or 68 | 24 months |
| 69 or older | 12 months |

When disability benefits terminate, a member may:

1. Apply for service retirement if eligibility requirements have been met.

   If disability benefits terminate at age 65 or at the end of the specified benefit period, the percentage used in calculating a member's service retirement benefit will be the greater of the following:

- Total number of years of service credit multiplied by 2.2%, or

- Total number of years of service credit plus years on disability allowance multiplied by 2.2% (not to exceed 45% of FAS).

If disability benefits terminate for any other reason, the service retirement calculation will be based on the total years of service credit multiplied by 2.2%. If you retire with less than 34 years of service credit and before age 65, benefits are reduced. The reduction is based on your total years of service credit and age at retirement. The service requirement for an **unreduced retirement benefit** will increase to a minimum of **35 years of service** on Aug. 1, 2023.

2. Become inactive and apply for service retirement when eligible.

3. Return to teaching.

- A member who was under contract when disability benefits were granted and who has not resigned is considered on a leave of absence from his or her position during the first five years following the effective date of disability benefits. If disability benefits are terminated by the Retirement Board within the five-year period, the member is entitled to employment in the same or a similar position and at the same salary no later than the next Sept. 1, unless the member was dismissed, resigned or does not hold a valid teaching license.

- A member who returns to public employment following termination of disability benefits and earns two years of Ohio service credit in STRS Ohio, OPERS or SERS receives credit toward service retirement for the time on disability. The total credit granted will be the lesser of the time on disability, five years or credit to match the amount of time the member returned to work.

4. Withdraw the account balance. See Pages 10–13 for information.

## Account withdrawal in lieu of benefits

Upon termination of public employment in Ohio, you may elect to withdraw your account. It is important to understand that withdrawing your STRS Ohio account is not a type of service retirement. **Withdrawal of your account will cancel your STRS Ohio membership, your accumulated service credit and your eligibility to qualify for STRS Ohio retirement benefits. You will also lose access to health care coverage if eligible.**

Once disability benefits begin or if you have ever received disability benefits, a withdrawal of the account by you or your survivors would consist only of your contributions; no interest or 50% matching funds would be payable. Receiving disability allowance benefits does not reduce the member's contributions.

### Account withdrawal restrictions

You cannot withdraw your STRS Ohio account if you are:

- Under any form of teaching contract in an STRS Ohio-covered position, including substitute teaching;

- Under any type of verbal or written agreement for future teaching with an STRS Ohio employer under the retirement law;

- On a leave of absence;

- Currently receiving a monthly service retirement or disability benefit from STRS Ohio; or

- Currently contributing to a college or university alternative retirement plan. Only a transfer of STRS Ohio funds to the alternative retirement plan is permitted.

### Monthly payments vs. account withdrawal

| Plan Feature | Monthly Payments | Account Withdrawal |
|---|---|---|
| Lifetime monthly benefit | Yes | No |
| Survivor benefits | Yes | No |
| Access to health care coverage[1] | Yes | No |
| Five-year job protection if able to return to work [2] | Yes | No |
| Cost-of-living adjustments (COLA)[3] | Yes | No |
| Direct control over funds | No | Yes |
| Possible rollover to a qualified plan | No | Yes |
| Possible tax penalties | No | Yes |
| Death benefits[4] | Yes | No |
| Possible investment costs | No | Yes |
| Individual investment risk | No | Yes |
| Subject to reemployment guide-lines for Ohio public positions | Yes | No |

**Note:** Any payments you receive from STRS Ohio may affect your eligibility for Social Security benefits. For more information, contact Social Security toll-free at 800-772-1213.

### Spousal consent on account withdrawal

If you are married and meet the age and service requirements for retirement, you can withdraw your account only if your spouse consents to the withdrawal by signing the withdrawal application before a notary public.

---

[1] See Page 15 for more information on access to health care coverage.

[2] Only a member who was under contract when granted disability allowance and who has not resigned shall be considered on leave of absence from his or her position during the first five years following the effective date of disability benefits.

[3] New STRS Ohio benefit recipients are eligible to receive a COLA beginning on the fifth anniversary of their retirement date. The State Teachers Retirement Board will periodically evaluate whether a cost-of-living increase is payable in accordance with the law in effect at that time (Section 3307.67, Revised Code). If a COLA is granted, you will receive it on the anniversary of your retirement date.

[4] Defined Benefit Plan retirees have a $1,000 automatic death benefit with the option to purchase an additional $1,000 or $2,000.

DR. Berger  12/20/2022

## Withdrawal amount

The withdrawal amount consists of your contributions plus interest and, with 5.00 or more years of qualifying service credit,* 50% matching funds.

- **With 5.00 or more years of qualifying service credit,*** interest at a current rate of 3% compounded annually will be paid on your member contributions and an additional amount equal to 50% of the sum of your member contributions, plus interest, will also be paid.

- **With at least 3.00 years but less than 5.00 years of qualifying service credit,*** interest at a current rate of 3% compounded annually will be paid on your member contributions.

- **With less than 3.00 years of qualifying service credit,*** interest at a current rate of 2% compounded annually will be paid on your member contributions.

Interest rates are subject to change. To confirm current interest rates, contact STRS Ohio toll-free at 888-227-7877.

Interest for all years to be withdrawn begins to accrue in the fiscal year following deposit. For example, interest on 2022–2023 contributions would begin July 2023 and be payable August 2023 or later. No interest is payable if a member withdraws his or her account in July and contributed to STRS Ohio for only the year just ended. Interest stops accruing the month before account withdrawal.

## Items to consider

There are situations in which an account withdrawal in lieu of a disability benefit may be beneficial. For example, if the member has a terminal illness or shortened life expectancy *and* does not have any survivors who qualify for monthly benefits, a withdrawal may be a good choice.

Keep in mind that you and your survivors give up the opportunity to qualify for STRS Ohio-sponsored health care coverage, survivor benefits and other

potential benefits if your account is withdrawn. For more information about survivor benefits, please see the *Survivor Benefits* brochure.

## Important tax considerations

If you choose to withdraw your STRS Ohio account, there are important tax implications.

If you choose to have your withdrawal paid directly to you:

- Your payment will be taxed in the year in which it is issued.

- STRS Ohio will withhold federal tax at a rate of 20%.

- If you receive the payment before age 59-1/2, you may have to pay a 10% tax penalty for an early withdrawal.

You may roll over your withdrawal amount to an eligible retirement account that will accept your rollover and:

- Your payment will not be taxed in the current year and no taxes will be withheld.

- The rolled over funds will be taxed when removed from the account to which they were deposited.

Beginning in the year you reach age 72 or terminate employment, whichever is later, a certain portion of your payment cannot be rolled over because it is a "required minimum payment" that must be paid to you. STRS Ohio can tell you if your payment includes amounts that cannot be rolled over.

There are other tax implications if you withdraw your STRS Ohio account. Review our *Account Withdrawal* brochure and consult a professional tax advisor for more information. STRS Ohio cannot provide tax advice.

## Account withdrawal procedures

If you want to withdraw your STRS Ohio account, log in to your Online Personal Account at www.strsoh.org to complete the online application. You can also access a paper copy of the *Application for Withdrawal Payment* on the website.

---

*When referring to withdrawals, "qualifying service credit" refers to Ohio teaching service, restored withdrawn credit, purchased service for Ohio public teaching from which no STRS Ohio contributions were withheld, and credit obtained for leaves of absence under Section 3307.77 of the Revised Code.

## Purchasing service credit

Purchasing service credit *before* disability benefits begin may increase the amount of the disability benefit. Purchasing service credit *after* disability benefits begin does not increase the disability benefit. However, purchasing service credit may be advantageous if the additional credit raises the level of survivor benefits or future service retirement benefits. Because purchasing service credit may or may not be beneficial, individual counseling from STRS Ohio is recommended.

Records used to verify service credit are sometimes difficult to obtain; it is advisable to request certification forms from STRS Ohio to begin the certification process as soon as possible. Certifying credit does not obligate a member to purchase credit, but it does verify the credit amount and current cost.

For more information, refer to the *Purchasing Service Credit* brochure.

## Taxation of disability benefits

### Federal income tax

Disability benefits are considered regular income and are fully taxable. When you reach minimum retirement age or apply for service retirement, a portion of your benefit may be tax-free. More information will be provided at the time benefits begin.

### State/Local income tax

Disability benefits for Ohio residents may be tax-free if the disability is permanent and the recipient is unable to work for pay in any job for which the recipient is qualified. Disability benefits may also be excludable from municipal taxes and school district income taxes. Please consult a qualified tax advisor regarding the taxability of STRS Ohio disability benefits.

### Taxable income

Following the end of the calendar year, benefit recipients who have not opted out of receiving paper copies will be mailed a 1099-R form for monthly benefits showing annual gross benefits and taxable

amount as computed by STRS Ohio. The 1099-R form is also made available in your Online Personal Account.

*For more details about taxation of benefits, contact the Internal Revenue Service, the Ohio Department of Taxation or a qualified tax consultant. STRS Ohio cannot provide tax advice.*

## Health care coverage

### Access to health care coverage

A disability benefit recipient may choose to participate in the STRS Ohio Health Care Program* by paying a monthly premium for this coverage. Health care coverage (medical/prescription, dental and vision) may begin the first month following Retirement Board approval of disability benefits or the benefit effective date, whichever is later.

A disability benefit recipient's eligible dependents may also enroll in an STRS Ohio health care plan for additional premiums. Eligibility, coverage levels and the cost of the STRS Ohio Health Care Program are determined by the Retirement Board.

Monthly premiums are automatically deducted from disability benefits and are deducted after taxes. If your monthly benefit payment is not large enough to cover the premiums, STRS Ohio will deduct as much as possible from your monthly benefit. The remaining balance must be paid by direct debit, which you are required to establish with your financial institution.

STRS Ohio offers a Health Care Assistance Program to help qualified benefit recipients who need financial assistance paying for their STRS Ohio health care plan. Eligibility is based on total family income and total liquid assets. Call toll-free 888-227-7877 for more information.

A disability recipient must have 15 or more years of service credit (or 20 years of service credit if granted disability benefits on or after Aug. 1, 2023) to have access to health care coverage if the recipient later

---

*The STRS Ohio Health Care Program is not guaranteed. STRS Ohio may change or discontinue all or part of the program for all or a class of eligible benefit recipients and covered dependents at any time. Currently, members must have at least 15 years of service credit (or 20 years of service credit for retirement on or after Aug. 1, 2023) to qualify for access to the STRS Ohio Health Care Program (medical/prescription, dental and vision).

Scanned 12/20/2022

DEFINED BENEFIT PLAN

applies for service retirement. Health care eligibility is based on the service credit used to calculate the service retirement benefit.

### Medicare enrollment

STRS Ohio requires all medical plan participants to enroll in Medicare Parts A & B at age 65 or when eligible. If Medicare Part A (hospital insurance) is not premium-free, you do not need to enroll in Part A. However, Medicare Part B (medical insurance) is required. If you decline Medicare coverage, you will not be eligible for an STRS Ohio medical plan.

Most people age 65 or older qualify for premium-free Medicare Part A based on their own or their current or former spouse's employment history. Even if you aren't yet age 65, you may be eligible for Medicare coverage if you have a qualifying disability, end-stage renal disease or amyotrophic lateral sclerosis (ALS). Contact Medicare toll-free at 800-633-4227 or www.medicare.gov for eligibility determination.

After you've enrolled in Medicare, you must submit your Medicare information through your Online Personal Account. Your Medicare status determines your health care plan eligibility, the cost of your health plan and the percentage you will be responsible for paying when your medical claims are processed.

### Dental and vision coverage

STRS Ohio offers dental and vision plans to disability benefit recipients who are eligible to enroll in the STRS Ohio Health Care Program (see Pages 15–16). A disability benefit recipient's eligible dependents may also enroll. Enrollment in an STRS Ohio medical plan is not a requirement to enroll in the dental plan or vision plan. Separate monthly premiums apply to the dental and vision plans. Information about dental and vision coverage can be found in the Receiving Benefits section of our website under Health Care.

DEFINED BENEFIT PLAN

## Other important benefits

### Survivor benefits

Disability benefit recipients have survivor benefits. Qualified survivors may be eligible to receive a monthly benefit or to withdraw the account balance. This withdrawal payment consists of the member's contributions only; no additional amounts are payable. For more information regarding survivor benefits, please refer to the *Survivor Benefits* brochure.

### Cost-of-living adjustment (COLA)

New STRS Ohio benefit recipients are eligible to receive a COLA beginning on the fifth anniversary of their retirement date. The State Teachers Retirement Board will periodically evaluate whether a cost-of-living increase is payable in accordance with the law in effect at that time (Section 3307.67, Revised Code). If a COLA is granted, you will receive it on the anniversary of your retirement date.

### Death benefits

An automatic $1,000 death benefit is payable to a disability benefit recipient's designated beneficiary. This automatic benefit is considered a nontaxable life insurance payment; therefore, it is a tax-free benefit to the beneficiary.

A disability benefit recipient may purchase an additional $1,000 or $2,000 death benefit for a monthly premium. This optional death benefit is subject to a six-month waiting period and is taxable when it is paid. For further information about this benefit, please see the *Death Benefits* brochure.

## Employment while receiving disability benefits

Employment on any basis while receiving disability benefits may raise the issue of whether a recipient remains incapacitated from teaching.

A disability benefit terminates if the disability benefit recipient performs any teaching service. Performing teaching service includes any and all teaching service, as well as any service that you participate in that is similar to the position held as a contributing member of STRS Ohio, whether full time or part time, in a public or private setting, school or nonschool setting, on a volunteer basis or for compensation, in or outside the state of Ohio. STRS Ohio defines to "perform any teaching service" as follows:

1. All employment, contracted services or volunteer work, that if performed in an Ohio public school would be covered by STRS Ohio; and

2. All teachers, tutors, substitute teachers, electronic classroom instructors, day care teachers, community school instructors and private-lesson providers; and

3. Work that relates to the work of educators, such as but not limited to, writing curriculum; leading workshops; providing training; instructing students of any age; or directing teachers, student teachers or students.

The Retirement Board has the final determination.

A member receiving a disability benefit from STRS Ohio on a combined basis with OPERS, SERS or both, is ineligible for employment covered by any system that participates in the combined disability retirement. In addition, any employment restrictions in those systems will also apply to you.

Disability recipients receiving a disability benefit independent from OPERS, SERS or both, also may not work in any position covered by another Ohio public retirement system for the first two months of benefits. After this two-month waiting period, part-time or full-time employment in a position covered

by any other retirement system may be permitted. While this employment is not performing teaching service, it can raise the issue of whether the member remains incapacitated from teaching and result in reexamination.

Disability benefit recipients who have received a benefit for at least 14 months must annually complete a *Disability Statement of Employment and Earnings*. STRS Ohio will notify disability recipients when their statement is available for completion in their Online Personal Account. Disability recipients are required to report any employment, earnings and volunteer service performed while receiving disability benefits. If this information is not submitted, disability benefits and health care coverage, if applicable, will be terminated.

In addition, STRS Ohio may request disability recipients to be reexamined annually to ensure they are still incapacitated from teaching.

Before becoming reemployed while receiving disability benefits, members should submit a job description to STRS Ohio for evaluation.

Scanned 12/20/2022

# STRS Ohio Resources

## By phone: **888-227-7877 (toll-free)**

Our dedicated team of member service representatives is available to answer your questions when you need them.

- Call Monday–Friday, 8 a.m.–5 p.m.

When you need more detailed information, our benefits counselors can provide you with one-on-one consultation in our Columbus office, through a teleconference, videoconference or during field counseling sessions.

## On the Internet: **www.strsoh.org**

A quick way to access information is through STRS Ohio's website, where you will find the items below and much more.

- A presentation of the disability application process
- Benefit information (while teaching and in retirement)
- Online Personal Account information
- Videos and on-demand webinars
- Counseling and seminar information
- STRS Ohio publications and forms
- Benefit calculators

## By email:

- Go to www.strsoh.org and select "Contact" from the top menu.

## Email news service

STRS Ohio updates members about legislation, benefits and other issues affecting the STRS Ohio membership through our email news service — *eUPDATE*. All members with an email on file receive the *eUPDATE*.



## Publications available

The following STRS Ohio publications are available on the STRS Ohio website at www.strsoh.org:

- *Account Withdrawal*
- *Annual Comprehensive Financial Report*
- *Death Benefits*
- *Disability Allowance*
- *Disability Retirement*
- *Employment After Retirement*
- *Preparing for Retirement*
- *Purchasing Service Credit*
- *Service Credit Guidelines*
- *Service Retirement and Plans of Payment*
- *Survivor Benefits*
- *Understanding Your STRS Ohio Benefits — Plan Summary*



STATE TEACHERS RETIREMENT SYSTEM OF OHIO
275 East Broad Street • Columbus, OH 43215-3771
888-227-7877 • www.strsoh.org

Channel 12/20/2022



Unum
THE BENEFITS CENTER
PO BOX 100158
COLUMBIA, SC 29202-3158

AT 001 000594 UNLTAHO1 000000
AMY L REMER
118 CRABAPPLE DR
SWANTON OH 43558-8411

S 000594 UNLTAHO1 002223

Exhibit C

RECEIVED  12/20/2022

Unum
The Benefits Center
PO Box 100156
Columbia, SC 29202-3158
Phone: 1-800-858-6843
Fax: 1-800-447-2498
www.unum.com



April 22, 2022

AMY L REMER
118 CRABAPPLE DR
SWANTON, OH 43558

RE:     Remer, Amy L
        Claim Number:        21103779
        Policy Number:       953733
        Unum Life Insurance Company of America

We have completed our review of your Long Term Disability claim and are unable to approve your benefits.  Please review this entire letter as it will help you understand how we reached this decision.

| Long Term Disability Claim Number: 21103779 | Contact Us |
|---|---|
| **Last Day Worked:** September 07, 2020 | **Direct:** Brandon Cook 1-800-858-6843 extension, 54290 |
| **Date of Disability** September 08, 2020 | **Call Center:** 1-800-858-6843 8am - 8pm ET, Mon-Fri |

## Information that Supports our Decision

Your policy allows a certain period of time in which your claim and proof of loss must be received.  We received your claim on April 08, 2022, which was not within the required time frame.  The information in your file indicates you initially stopped working on September 08, 2020, due to your diagnosis of Left Arm Amputation.  We received your completed claim on April 08, 2022.  According to the Notice and Proof of Loss provisions in your policy (outlined below) your claim should have been received no later than September 08, 2021. Because we did not receive your claim by this date, we are unable to complete a thorough review of your claim.

During a telephone call with you on April 15, 2022, you advised that you did not file when you stopped working because nobody explained that you should have filed for Long Term Disability benefits at that time, and you were not made aware that you should apply until recently.  You

Channel 12/20/2022

then filed your claim on April 08, 2022. We have taken this information into consideration, however claiming a lack of knowledge about your coverage is not enough on its own to justify late notice of filing. You have not lacked legal capacity or have a legal reason preventing you from applying for long term disability. Ohio is a strict filing state and does not require a showing of prejudice on late filed claims. we are unable to continue our review, and as a result your claim will close with no benefits payable due to late notice of filing.

## Policy Provisions

We relied upon your policy when making our decision, including provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

### WHEN DO YOU NOTIFY UNUM OF A CLAIM?

We encourage you to notify us of your claim as soon as possible so that a claim decision can be made in a timely manner. Notice of claim should be sent within 30 days after the date your disability begins. In addition, you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity. In no event can proof of your claim be submitted after the expiration of the time limit for commencing a legal proceeding as stated in the policy, even if your failure to provide proof of claim is due to a lack of legal capacity or if state law provides an exception to the one year time period.

You must notify us immediately when you return to work in any capacity.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of your claim, provided at your expense, must show:

- the date your disability began;
- the existence and cause of your sickness or injury;
- that your sickness or injury causes you to have limitations on your functioning and restrictions on your activities preventing you from performing the material and substantial duties of your regular occupation or of any other gainful occupation for which you are reasonably fitted by education, training, or experience;
- that you are under the regular care of a physician;
- the name and address of any hospital or institution where you received treatment, including all attending physicians; and
- the appropriate documentation of your monthly earnings, any disability earnings, and any deductible sources of income.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. We may also require that you send us appropriate financial records, which may include income tax returns, which we believe are necessary to substantiate your income. We may request that you send periodic proof of your claim. This proof, provided at your expense, must be received within 45 days of a request by us. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

00000051

Claimant Name: Remer, Amy L
Claim Number: 21103779

April 22, 2022
Page 3 of 5

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to meet with and be interviewed by an authorized Unum Representative. Unum will deny your claim, or stop sending you payments, if you fail to comply with our requests.

## HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

MATERIAL AND SUBSTANTIAL DUTIES means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

WHEN DOES YOUR COVERAGE END?

Non-Massachusetts Residents
Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

**Next Steps Available to You**

If you disagree with our decision, you may request an appeal.

Claimant Name: Remer, Amy L.
Claim Number: 21103779

April 22, 2022
Page 4 of 5

**What is an Appeal?**

An appeal is your written disagreement with our claim decision and a request for a review of that decision.

**How do you request an Appeal?**

You will need to submit a written letter of appeal outlining the basis for your disagreement. To ensure handling of your appeal without delay, please include any additional information you would like considered. This information may include written comments, documents, or other information in support of your appeal.

**How much time do you have to request an Appeal?**

You have 180 days from the date you receive this letter.

If we do not receive your written appeal within 180 days of this letter, our claim determination will be final.

**Where do you mail or fax your written request for an Appeal?**

The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Fax Number: 1-207-575-2354

Our Appeals Unit will send you a letter acknowledging receipt of your appeal including your Appeals Specialist's contact information.

**How does the Appeal process work?**

An Appeals Specialist will review your entire claim, including any new information you submitted.

**How much time does the Appeal review take?**

We want you to know that our Appeals Unit is committed to completing their review as soon as possible and will provide you with status updates every thirty days until a decision is reached.

We hope this letter has been clear and helpful to you. If you have questions about your claim or this process, please call our Contact Center at 1-800-858-6843, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our experienced representatives have access to your claim documentation and will be able to assist you. We will identify your claim by your Social Security number or claim number, so please have one of these numbers available when you call. If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 54290.

Electronically Filed 12/20/2022

Claimant Name: Remer, Amy L
Claim Number: 21103779

April 22, 2022
Page 5 of 5

| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
|---|---|
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843。 |
| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek`ehgo shika at`ohwol ninisingo, kwiijigo holne` 1-800-858-6843. |

Sincerely,

*Brandon Cook*

Brandon Cook
Benefits Specialist

00094 UNLTAHO1 00228   E

Scanned 12/20/2022

## Appeal Representation Authorization Form

**Patient Name:** Amy Remer  **Date of Birth:** 4/2/1981

**Telephone:** 419-410-9139

**Address:** 118 Crabapple Dr., Swanton, OH 43558

I hereby authorize Allotta | Farley Co., L.P.A. or its representatives to represent me and act on my behalf in any claim or appeal with my health plan, insurance carrier, pharmacy benefit manager, or long term disability carrier related to any denial of coverage that I have received. I therefore authorize any health plan, insurance carrier, pharmacy benefit manager, or long term disability carrier to release any of my protected health information ("PHI"), including information related to substance use disorders, to my representative named above for the purpose of resolving my claim or appeal. I have read and I understand the following statements about my rights:

- I understand that the information in my health record may include information relating to sexually transmitted diseases, tuberculosis (TB), hepatitis B, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).
- I may revoke this authorization at any time prior to its expiration date by providing written notification to the insurance plan or carrier that is considering my claim or appeal, but that such revocation will not have any effect on any action(s) taken prior to the receipt of said revocation.
- I may see and copy the information described on this form along with any communications between an insurance plan or carrier that is considering my claim or appeal and my legal representative noted herein.
- I am not required to sign this form to receive my health care benefits (e.g., enrollment, treatment, or payment).
- The information that is used or disclosed pursuant to this authorization may be re-disclosed by the receiving entity.
- Unless previously revoked in writing, this authorization will expire one (1) year from the date I have executed it.

Please direct any and all future communications concerning my claim for benefits or appeal to the following individual:

Jeremy T. Rodriguez
Allotta | Farley Co., L.P.A.
Preston Building
3240 Levis Commons Blvd.
Perrysburg, OH 43551
Fax: (419) 535-1935

**Patient Signature:** Amy Remer  **Date:** 5/12/2022

**Printed name of client's representative:** Allotta | Farley Co., L.P.A. – Jeremy T. Rodriguez

**Representative Signature:** Jeremy T. Rodriguez

**Date:** 5-11-22

RECEIVED 12/20/2022



Preston Building • 3240 Levis Commons Boulevard
Perrysburg, Ohio 43551
(419) 535-0075 • Fax (419) 535-1935
www.allottafarley.com

May 27, 2022

<u>*Submitted via Fax*</u>
Unum Benefits Center
Appeals Unit
P.O. Box 9548
Portland, Me 04104-5058
Fax No.1-207-575-2354

        **Re:**    **Appeal on Behalf of Amy L. Remer**
               **Claim No.:**   21103779
               **Policy No.:**   953733

Dear Unum Life Insurance Company:

     Please be advised that this law office, as noted in the authorization attached hereto, has been hired to represent Amy L. Remer with respect to her appeal for benefits under the Unum Long Term Disability Policy noted above (hereinafter, the "Policy"). Her initial claim, which is also referenced above, was rejected because the Unum Life Insurance Company ("Unum") claimed that it was submitted beyond the internal limitations period set forth in the Policy.

     As described in greater detail below we are appealing this determination on two separate grounds. First, any deadlines under an employer sponsored disability plan such as the Policy have been tolled under guidance issued by the Departments of Health and Humans Services, Treasury, and Labor (the, "Joint Agencies"). Second, even if the original deadline of September 2021 is accurate, any delay in filing the claim is both minimal and reasonable given the underlying circumstances and is not prejudicial to Unum or in any way prevents Unum from undertaking a full and fair review.

<u>*Extended Deadlines Under EBSA Disaster Relief Notices*</u>

     The Policy referenced above is held by the University of Toledo and was established (and is maintained) by the University for the purpose of providing long term disability benefits to certain classes of employees. Mrs. Remer is eligible in the Plan through her employment with the University of Toledo and qualifies as a "participant" in the Plan. (See 29 U.S.C. §1002(7)). Mrs. Remer filed a claim for benefits under the Policy on April 8, 2022. On April 22, 2022, she received a notice from Unum that her claim was denied because her claim was filed beyond the internal 1-year deadline set forth in the policy. In the denial letter, Unum asserts that Mrs. Remer became disabled on September 8, 2020 and therefore should have filed her claim for disability benefits by September 8, 2021.

1 | P a g e



In response to the COVID-19 pandemic, on May 4, 2020 the Joint Agencies issued EBSA Disaster Relief Notice 2020-01. According to that Notice, certain deadlines for health, retirement, and disability plans that occurred after March 1, 2020 were tolled for one year. "With regard to disability, retirement, and other plans, the joint notice provides additional time for participants and beneficiaries to make claims for benefits and appeal denied claims." Therefore, Mrs. Remer's claim for benefits falls within the extended filing period granted under Notice 2020-01.

On February 26, 2021, the Joint Agencies issued EBSA Disaster Relief Notice 2021-01 which further clarified the relief provisions described above. Specifically, Notice 2021-01 provides the following:

> "Individuals and plans with timeframes that are subject to the relief under the Notices will have the applicable periods under the Notices disregarded until the earlier of (a) 1 year from the date they were first eligible for relief; or (b) 60-days after the announced end of the National Emergency (the end of the Outbreak Period)."

In other words, any deadlines that were set to expire during the COVID National Emergency were effectively "tolled" until the earlier of (a) 1-year from the original deadline, or (b) 60-days after the National Emergency is lifted. On February 18, 2022, President Biden issued a Proclamation extending the National Emergency. This extension will carry for one-year unless the President declares an earlier end date. As of the date of this appeal letter, no such ending date has been declared. This same guidance was adopted by the Center for Medicare and Medicaid Services ("CMS") on May 14, 2020 and remains in effect.

Since the National Emergency is still effective, this means Mrs. Remer's deadline has been tolled until one-year from the original cutoff date. In other words, using Unum's onset date of September 8, 2020 and the Disaster Relief Notices cited above, Mrs. Remer is required to file her claim by **September 8, 2022**. In the denial letter, Unum notes that it received her claim on April 8, 2022. This is well before the extended filing deadline. Therefore, her claim should not be rejected under these grounds and should be processed as required under the Policy and applicable law.

### *Lack of Prejudice from Delayed Notice & Equitable Tolling*

At this point, is unclear how Unum determined Mrs. Remer's disability onset date of September 8, 2020 and what considerations were evaluated. Thus, Mrs. Remer reserves the right to challenge that determination in the future. Nevertheless, even assuming that the onset date is accurate and that the claim does not qualify for the relief noted above, Mrs. Remer's claim was filed within the time limit for commencing legal action as stated in the Policy and should be considered timely. Moreover, even if the claim is outside of the filing period, Unum has not been prejudiced by the delay and should therefore process the claim as required under both the Policy and applicable law.

The Policy provides that notice of a claim should file as soon as possible, but within 30-days after the date a disability begins. However, it also states that notice must provided within one-year after the disability commences and in no event can be made after the time limit for commencing legal action (i.e., 3 years from the date the claim was denied). A participant must also notify Unum immediately if he or she returns to work. As noted above, Unum received Mrs. Remer's initial claim on April 8, 2022. Further, and as discussed below, both Mrs. Remer and her employer reasonably expected her to return to work and she continued to receive her regular compensation following both the surgery and prosthetic fitting.

In *Ogborne v. UNUM Life Ins. Co. of America*, 2006 WL 250905, the Northern District Court for the Western Division of the Federal 6th Circuit noted that "Ohio law requires a two-step approach to 'late notice' cases. First a court must determine whether notice was provided 'within a reasonable time in light of all the surrounding facts and circumstances,'" *Id.*, at 1, quoting *Ferrando v. AutoOwners Mutual Ins. Co.*, 98 Ohio St. 3d 186, 208 (2002); also citing *Clark v. Chubb Group of Ins. Co.*, 337 F.3d 687, 692 (6th Cir. 2003). If the insured failed to provide notice within a reasonable period, "there is a presumption of prejudice to the insurer which the plaintiff has the burden of rebutting." *Ogborne*, 2006 WL 250905, 1.

In *Ogborne*, the participant injured his hand in a car accident on June 18, 2001. He was unable to determine the permanent and debilitating nature of the injury until two years later. He then filed a claim for benefits which the insurance company later denied as untimely. His claim was filed three (3) months after he determined that the injury was permanent and that he would be unable to resume his regular occupation. The *Ogborne* Court held that the late notice was reasonable given that it was provided within a reasonable time after the participant discovered that the hand injury was a permanent disability.

> *"To hold otherwise would be to penalize insureds who anticipate, seek, and desire in good faith to resume their occupations. It is appropriate to permit an insured to wait until all hope of doing so first appears lost, instead of demanding that he or she provide notice as doubts begin to arise and uncertainty increases. The interests of neither the insured nor the company would be served by a legal standard that would encourage potentially premature claims. This is particularly so in cases in which no reasonable likelihood of prejudice is apparent." Id.*, at 5, FN 1.

In the instant claim, Mrs. Remer underwent surgery to amputate her left arm on September 8, 2020. After her surgery, Mrs. Remer remained in regular contact with her employer. Both she and her employer were under the good faith belief that she would eventually return to work once she was fitted for a prosthetic arm and adjusted to life with the new artificial limb. In other words, both parties expected that Mrs. Remer would need time to recover from the surgery and adjust to the prosthetic arm before determining whether she could resume her regular occupation.

3 | P a g e

Received 12/20/2022

.

Mrs. Remer was not fitted with the prosthetic limb until the summer of 2021. It was only after this adjustment period that Mrs. Remer determined that she was unable to resume her regular occupation. She informed her employer of this development in January of 2022. During this time, Mrs. Remer continued to receive her regular salary. Therefore, it is unreasonable for Unum to assert that Mrs. Remer should have known she was totally disabled immediately following her surgery (i.e., September 8, 2020). In fact, both she and her employer were under the impression that she would return to work once she adjusted to the artificial limb. Thus, her claim was both timely and reasonable given the underlying circumstances.

Further, in *Longazel v. Fort Dearborn Life Insurance Co.,* 363 Fed. Appx. 365 (6th Cir. 2010), the Court held that a deadline under an insurance policy can be equitably tolled if the insured can establish a lack of notice, diligence in pursuing one's rights, absence of prejudice to the insurer, and reasonableness in being unaware of the rules.

Using Unum's onset date, Mrs. Remer filed her claim a mere seven (7) months after the purported September 8, 2021 deadline. At this point, it is unclear how, or even when, either Unum or her employer provided Mrs. Remer with a copy of the Policy thereby notifying her of the one-year filing deadline. Further, and as described above, Mrs. Remer was not fitted with a prosthetic arm until the summer of 2021. At that time, both she and her employer reasonably expected her to return to work. In fact, the parties remained in contact and Mrs. Remer continued to receive her regular compensation. Mrs. Remer notified Unum within four (4) months after determining that she was unable to return to work. Again, this was a mere seven (7) months after the purported September 8, 2021 cutoff date. Thus, not only was Mrs. Remer diligent in pursuing her rights, but her delay is entirely reasonable given the facts and circumstances and in no way jeopardizes Unum's ability to conduct a full and fair review.

*Conclusion*

In conclusion, it is evident that Unum's original determination to deny the claim based on its application of the Policy's internal one-year filing deadline is incorrect and contrary to underlying law. As noted above, her claim for benefits falls within the relief granted in in EBSA Disaster Relief Notices 2020-01 and 2021-01 and was filed well before the extended filing deadline.

Further, even if Mrs. Remer does not qualify for the relief set forth in the Disaster Relief Notices, her delay in filing her claim was both reasonable under the circumstances and in no way prejudicial to Unum. Unum's original determination that the deadline was September 8, 2021 ignores several pertinent facts, including the expectations of both Mrs. Remer and her employer; the fact that she wasn't fitted with a prosthetic limb until the summer of 2021; and that Mrs. Remer, a mother of four small children, would need time following both her surgery and prosthetic fitting to adjust both physically and mentally to the personal and professional challenges life with an artificial limb presents. And this all occurred while her regular job duties were changed in response to the COVID-19 National Emergency. Thus, any purported delay in filing the claim was minimal,

4 | P a g e

Received 12/20/2022

reasonable, did not prejudice Unum, and would likely qualify for relief under the doctrines of notice-prejudice or equitable tolling as described above.

Finally, at this point is unclear how Unum determined Mrs. Remer's disability onset date and what factors were considered. However, it does not appear that any of the extenuating circumstances mentioned above were take into account. Thus, and as set forth above, we believe that Mrs. Remer's claim for benefits falls within the deadlines set forth in the Policy. Accordingly, we respectfully request that Unum find the claim to be timely and begin processing the claim as required under the Policy and applicable law.

If you have any questions regarding this appeal, please contact the undersigned counsel. Thank you very much.

Sincerely,

Allotta | Farley Co. L.P.A.

Jeremy T. Rodriguez

Enclosure(s)

Scanned 12/20/2022

## Appeal Representation Authorization Form

Patient Name: Amy Remer          Date of Birth: 4/2/1981

Telephone: 419-410-9139

Address: 118 Crabapple Dr., Swanton, OH 43558

I hereby authorize Allotta | Farley Co., L.P.A. or its representatives to represent me and act on my behalf in any claim or appeal with my health plan, insurance carrier, pharmacy benefit manager, or long term disability carrier related to any denial of coverage that I have received. I therefore authorize any health plan, insurance carrier, pharmacy benefit manager, or long term disability carrier to release any of my protected health information ("PHI"), including information related to substance use disorders, to my representative named above for the purpose of resolving my claim or appeal. I have read and I understand the following statements about my rights:

- I understand that the information in my health record may include information relating to sexually transmitted diseases, tuberculosis (TB), hepatitis B, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).
- I may revoke this authorization at any time prior to its expiration date by providing written notification to the insurance plan or carrier that is considering my claim or appeal, but that such revocation will not have any effect on any action(s) taken prior to the receipt of said revocation.
- I may see and copy the information described on this form along with any communications between an insurance plan or carrier that is considering my claim or appeal and my legal representative noted herein.
- I am not required to sign this form to receive my health care benefits (e.g., enrollment, treatment, or payment).
- The information that is used or disclosed pursuant to this authorization may be re-disclosed by the receiving entity.
- Unless previously revoked in writing, this authorization will expire one (1) year from the date I have executed it.

Please direct any and all future communications concerning my claim for benefits or appeal to the following individual:

Jeremy T. Rodriguez
Allotta | Farley Co., L.P.A.
Preston Building
3240 Levis Commons Blvd.
Perrysburg, OH 43551
Fax: (419) 535-1935

Patient Signature: Amy Remer                    Date: 5/12/2022

Printed name of client's representative:   Allotta | Farley Co., L.P.A. – Jeremy T. Rodriguez

Representative Signature: Jeremy T. Rodriguez

Date: 5-11-22



Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: 1-800-858-6843
Fax: 207-575-2354
www.unum.com

June 10, 2022

JERRY RODRIGUEZ
ALLOTTA FARLEY, CO. LPA
PRESTON BLDG 3240 LEVIS COMMOM BLVD
PERRYSBURG, OH 43551

RE:  Remer, Amy L
      Claim Number:        21103779
      Policy Number:       953733
      Unum Life Insurance Company of America

Unum Life Insurance Company of America completed the appeal review on your client, Amy Remer's Long Term Disability (LTD) claim.

Please read the following pages carefully, as they will help you understand how we reached our decision.

This letter includes the following:

- Initial Claim Decision

- The Appeal Decision

- Information that Supports the Appeal Decision

- Our Response to your Concern(s)

- Policy Provisions that apply to the Appeal Decision

- Next Steps Available

**Initial Claim Decision:**

The Benefits Center determined Ms. Remer filed a claim for LTD benefits after the policy deadline.  Therefore, her claim was closed with no benefits payable.

**Appeal Decision:**

We determined the decision on the claim is correct.

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Exhibit E




Channel 12/20/2022

**Information that Supports our Decision:**

Ms. Remer submitted a claim for Long Term Disability benefits stating she was unable to work as of September 08, 2020 due to Left Arm Amputation.  She submitted her completed claim form on April 08, 2022.

During a telephone call with the Disability Benefits Specialist on April 15, 2022, Ms. Remer advised she did not file when she stopped working because no one explained that she should have filed for Long Term Disability benefits at that time, and she was not made aware she should apply until recently.  She then submitted a claim on April 08, 2022.

Ms. Remer's having a lack of knowledge about her coverage, does not justify the untimely filing of her LTD claim.  The available information does not indicate Ms. Remer claimed a lack of legal capacity and instead advised that no one explained that she should file for LTD benefits.

Ms. Remer was notified by The Benefits Center in a letter dated April 22, 2022 that benefits could not be approved for her LTD claim because written proof of claim was not submitted within the required period for submitting proof of claim according to the policy provisions.

In reviewing the policy, the notice and proof of claim requirements state: notice of claim must be submitted within 30 days from the date your disability begins.  "In addition, you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity..."  According to the notice and proof of loss provisions in the policy Ms. Remer should have submitted her completed claim by September 08, 2021.

Based on our review, Ms. Remer's written proof of claim was submitted after the policy deadline.  She filed her claim on April 08, 2022 and this date was not within one year of her disability that occurred on September 08, 2020.

Since the policy requirements for providing proof of claim were not met, the decision to deny benefits on Ms. Remer's claim is appropriate.

**Our Response to Your Concerns:**

You submitted a letter of appeal dated Mary 27, 2022.  In summary, your letter noted you are appealing the denial decision on two separate grounds.

"First, any deadlines under an employer sponsored disability plan such as the Policy have been tolled under guidance issues by the Department of Health and Human Services, Treasury and Labor (the, "Joint Agencies")."

Unum is aware of the ERISA extended deadline set forth to submit a claim.  This is not applicable to Ms. Remer's claim as her employer's LTD policy is not governed by ERISA.

There are no specific disability disaster bulletin deadlines for the state of Ohio.

"Second, even if the deadline of September 08, 2021 is accurate, any delay in filing the claim is both minimal and reasonable given the underlying circumstances and is not prejudicial to Unum or in any way prevents Unum from undertaking a full and fair review."



Received 12/20/2022



Claimant Name: Remer, Amy L
Claim Number: 21103779

June 10, 2022
Page 3 of 5

Ohio is a strict filing state and Unum is not required to complete a prejudice review.

**Policy Provisions that Apply to the Appeal Decision:**

We relied upon your client's policy when making our decision, including the provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

### WHEN DO YOU NOTIFY UNUM OF A CLAIM?

We encourage you to notify us of your claim as soon as possible so that a claim decision can be made in a timely manner. Notice of claim should be sent within 30 days after the date your disability begins. In addition, you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity. In no event can proof of your claim be submitted after the expiration of the time limit for commencing a legal proceeding as stated in the policy, even if your failure to provide proof of claim is due to a lack of legal capacity or if state law provides an exception to the one year time period.

You must notify us immediately when you return to work in any capacity.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

Proof of your claim, provided at your expense, must show:

- the date your disability began;
- the existence and cause of your sickness or injury;
- that your sickness or injury causes you to have limitations on your functioning and restrictions on your activities preventing you from performing the material and substantial duties of your regular occupation or of any other gainful occupation for which you are reasonably fitted by education, training, or experience;
- that you are under the regular care of a physician;
- the name and address of any hospital or institution where you received treatment, including all attending physicians; and
- the appropriate documentation of your monthly earnings, any disability earnings, and any deductible sources of income.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. We may also require that you send us appropriate financial records, which may include income tax returns, which we believe are necessary to substantiate your income. We may request that you send periodic proof of your claim. This proof, provided at your expense, must be received within 45 days of a request by us. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

00083S UNLTA/KI 001925

Scanned 12/20/2022

Claimant Name: Remer, Amy L
Claim Number: 21103779

June 10, 2022
Page 4 of 5

## HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

MATERIAL AND SUBSTANTIAL DUTIES means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

## WHEN DOES YOUR COVERAGE END?

Non-Massachusetts Residents
Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

## Next Steps Available:

If you have questions about your client's claim or this process, please call our Contact Center at 1-800-858-6843, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday.  Any of our experienced representatives have access to your claim documentation and will be able to assist you.

Claimant Name: Remer, Amy L
Claim Number: 21103779

June 10, 2022
Page 5 of 5

If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 48086.

| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
|---|---|
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843. |
| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek`ehgo shika at`ohwol ninisingo, kwiijigo hoine` 1-800-858-6843. |

Sincerely,

*Teresa B Ward*

Teresa B Ward
Lead Appeals Specialist

Scanned 12/20/2022



Preston Building • 3240 Levis Commons Boulevard
Perrysburg, Ohio 43551
(419) 535-0075 • Fax (419) 535-1935
jhadrieres@allottafarley.com
www.allottafarley.com

August 10, 2022

*Sent via Fax*
Unum Appeals Unit
c/o Teresa B. Ward, Lead Appeals Specialist
P.O. Box 9548
Portland, ME 04104-5058
Fax: (207) 575-2354

> **Re:** **Request for Reconsideration of Denial of Appeal**
> **Remer, Amy L.**
> **Claim No.:** **21103779**
> **Policy No.:** **953733**

Dear Ms. Ward:

We received the response from the Unum Life Insurance Company of America (hereinafter, "Unum") regarding the appeal filed on behalf of Amy L. Remer regarding her long term disability benefit claim under the Policy referenced in the caption above. That response, dated June 10, 2022 (hereinafter referred to as the "June Denial Letter"), upholds the original decision to deny Mrs. Remer's claim for benefits on the grounds that it was filed beyond the internal deadline set forth in the policy. Please consider this letter a Request for Reconsideration of the decision on appeal to uphold the original determination by Unum.

As explained in greater detail below, we believe Unum's determination to uphold the denial of Mr. Remer's claim on the basis that it was untimely is contrary to the underlying terms of the Policy and potentially constitutes bad faith under existing Ohio law. Therefore, we respectfully request that Unum reconsider its determination in light of the information set forth below.

## UNUM Policy Terms and Conditions

According to the policy, a claimant "must send Unum proof of your claim not later than one year after the date your *disability* begins unless your failure is due to your lack of legal capacity (emphasis added)." Additionally, under the Policy an individual is considered disabled when:

- You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; **AND**

1

Scanned 12/20/2022

- You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury. *(See Policy Section entitled, "How does Unum Define Disability?").*

Finally, the Policy defines "monthly earnings" as "gross monthly income from your Employer, including shift differential, in effect just prior to your date of disability." Moreover, "monthly earnings" do not include "income received from commissions, bonuses, overtime pay, or any other extra compensation or income receive from sources other than your employer." *See Policy Section entitled, "What are your Monthly Earnings."*

## Grounds for Reconsideration

In the June Denial Letter, Unum states that Mrs. Remer was "unable to work as of September 08, 2020 due to Left Arm Amputation." Unum then asserts that, "according to the proof of loss provisions in the policy Mrs. Remer should have submitted her completed claim by September 08, 2021." Unum then concludes its determination by noting that Mrs. Remer "filed her claim on April 08, 2022 and this date was not within one year of her disability that occurred on September 08, 2020."

The decision set forth in the June Denial Letter is based on a disability onset date of September 8, 2020. This was the day after Mrs. Remer's surgery to amputate her left arm. However, under the terms of the Policy this cannot be the measurement date.

As indicated above, the Policy's definition of "disability" contains two (2) conditions. First, the claimant must be unable to perform the material and substantial duties of his or her occupation due to sickness or injury. Second, the claimant must experience a 20% or more decrease in their monthly indexed earnings because of said sickness or injury. In other words, the terms of Unum's Policy require both conditions be met before an individual is considered "disabled."

In Mrs. Remer's Appeal Letter dated May 27, 2022, we acknowledge that her last day of full employment was September 7, 2020 (i.e., the day before her surgery). However, we also noted that she continued to receive her regular salary following her surgery due to the expectations of both her and her employer. As explained in the May 27, 2022, both she and her employer anticipated that she would resume working once she was fitted with a prosthetic and had time to adjust. As set forth in the attached Forms W-2 for the 2019, 2020, and 2021 taxable years, Mrs. Remer's wages from the University of Toledo were as follows:

| Tax Period | Form W-2 Box 1 Wages |
|---|---|
| 2019 Tax Year | $41,488.71 |
| 2020 Tax Year | $40,581.36 |
| 2021 Tax Year | $39,864.98 |

2

FILED
12/20/2022

Thus, Mrs. Remer did not experience a twenty percent (20%) or greater loss in her monthly earnings in 2020 or 2021. In fact, Mrs. Remer continued to receive her salary from the University of Toledo until January 2022.

As a result, Mrs. Remer did not meet both Policy conditions outlined above on September 8, 2020. Therefore, under the facts as presented in both the appeal letter and this Request for Reconsideration, Mrs. Remer cannot be considered "disabled" under the Policy on September 8, 2020. While she did not work on that date, she never experienced a drop in her monthly earnings. Additionally, that also means that the claim deadline in this case cannot be September 8, 2021. As outlined above, this determination is completely inconsistent with the terms of the Policy and, as discussed below, potentially constitutes bad faith under Ohio insurance law.

## Ohio "Bad Faith" Insurance Law

Under Ohio insurance law, "an insurer has a duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272; *Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659, 666 (S.D. Ohio 2022). "An insurer breaches this duty when its failure to perform under the contract 'is not predicated upon circumstances that furnish a reasonable justification therefore." *Berkshire Life Ins. Co. of America v. John D. Dorsky*, 178 F. Supp. 3d 625, 634 (N.D. Ohio, Eastern Division 2016), quoting *Zappo v. Homestead Inc. Co.*, 71 Ohio St. 3d 552, 644 N.E. 2d 397, 400 (2012). "In sum, the question of bad faith rests on whether the insurer's conduct was unreasonable under the circumstances." *Smith v. Great-West Life Assur. Co.* 2012 WL 1085521, 2012 U.S. Dist. LEXIS 45559 (S.D. OH 2012).

As established above, the terms of the Policy require two (2) conditions be met before determining a date of disability. Further, and as also set forth above, Mrs. Remer did not meet one of those conditions on September 8, 2020. Therefore, that date cannot be her disability onset date. That also means her claims deadline cannot be September 8, 2021. When an insurer ignores the terms of its own policy it is acting unreasonably.

## Conclusion

As outlined above, Unum's decision to both deny Mrs. Remer's claim, and to uphold the original determination on appeal, on the grounds that the claim was not timely filed is incorrect and contrary to the terms of the Policy. Accordingly, we request that Unum reconsider its determination based on the discussion above and documentation attached hereto. As noted in our appeal letter, we believe Mrs. Remer's claim was timely filed and respectfully request that Unum review the claim under the terms of the Policy.

3

Scanned 12/20/2022

Sincerely,

Allotta | Farley Co. L.P.A.

Jeremy T. Rodriguez

Enclosure(s)

4

| a Employee's social security number | | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | |
|---|---|---|---|
| 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 | OMB No. 1545-0008 | | |
| **b Employer identification number (EIN)** 34-6401483 | | **1 Wages, tips, other compensation** 41488.71 | **2 Federal income tax withheld** 4391.34 |
| **c Employer's name, address, and ZIP code** The University of Toledo 2801 W. Bancroft St. Toledo OH 43606 | | **3 Social security wages** | **4 Social security tax withheld** |
| | | **5 Medicare wages and tips** 49170.21 | **6 Medicare tax withheld** 712.97 |
| | | **7 Social security tips** | **8 Allocated tips** |
| **d Control number** 2579 | | ▉▉▉▉▉▉▉▉▉▉▉▉ | **10 Dependent care benefits** |
| **e Employee's first name and initial** Amy L | **Last name** Remer   **Suff.** MA, | **11 Nonqualified plans** | **12 See instructions for box 12** C              86.24 DD        25104.72 |
| 118 Crabapple Dr Swanton OH 43558-8411 | | **13 Statutory employee [ ]   Retirement plan [ X ]   Third-party sick pay [ ]** | |
| **f Employee's address and ZIP code** | | **14 Other** | |

| 15 State OH | Employer's state ID number 513197038 | 16 State wages, tips, etc. 41488.71 | 17 State income tax 970.07 | 18 Local wages, tips, etc. 49170.21 | 19 Local income tax 1106.39 | 20 Locality name Toledo |
|---|---|---|---|---|---|---|
| | | | | 49170.21 | 737.54 | Swanton |

**Form W-2** Wage and Tax Statement          **2019**                    Department of Treasury – Internal Revenue Service

| | a Employee's social security number<br>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 | | | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | |
|---|---|---|---|---|---|
| b Employer identification number (EIN)<br>34-6401483 | | OMB No. 1545-0008 | | 1 Wages, tips, other compensation<br>40581.36 | 2 Federal income tax withheld<br>4411.03 |
| c Employer's name, address, and ZIP code<br>The University of Toledo<br>2801 W. Bancroft St.<br>Toledo OH 43606 | | | | 3 Social security wages | 4 Social security tax withheld |
| | | | | 5 Medicare wages and tips<br>48321.86 | 6 Medicare tax withheld<br>700.67 |
| | | | | 7 Social security tips | 8 Allocated tips |
| d Control number<br>2338 | | | | | 10 Dependent care benefits |
| e Employee's first name and initial | Last name | Suff. | | 11 Nonqualified plans | 12 See instructions for box 12<br>C        89.12<br>DD       28124.75 |
| Amy L | Remer | MA, | | | |
| 118 Crabapple Dr<br>Swanton OH 43558-8411 | | | | 13 Statutory employee  [ ]    Retirement plan  [ X ]    Third-party sick pay  [ ] | |
| f Employee's address and ZIP code | | | | 14 Other | |

| 15 State<br>OH | Employer's state ID number<br>513197038 | 16 State wages, tips, etc.<br>40581.36 | 17 State income tax<br>952.25 | 18 Local wages, tips, etc.<br>48321.86 | 19 Local income tax<br>1087.19 | 20 Locality name<br>Toledo |
|---|---|---|---|---|---|---|
| | | | | 48321.86 | 724.77 | Swanton |

**Form W-2** Wage and Tax Statement          2020          Department of Treasury – Internal Revenue Service

| a Employee's social security number 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 | | | | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | |
| --- | --- | --- | --- | --- | --- |
| **b Employer identification number (EIN)** 34-6401483 | | | | **1 Wages, tips, other compensation** 39864.98 | **2 Federal income tax withheld** 4343.15 |
| **c Employer's name, address, and ZIP code** The University of Toledo 2801 W. Bancroft St. Toledo OH 43606 | | | | **3 Social security wages** | **4 Social security tax withheld** |
| | | | | **5 Medicare wages and tips** 47369.42 | **6 Medicare tax withheld** 686.86 |
| | | | | **7 Social security tips** | **8 Allocated tips** |
| **d Control number** 2191 | | | | | **10 Dependent care benefits** |
| **e Employee's first name and initial** Amy L | **Last name** Ramer | **Suff.** MA, | | **11 Nonqualified plans** | **12 See instructions for box 12** C 99.32 DD 29860.40 |
| 118 Crabapple Dr Swanton OH 43558-8411 | | | | **13 Statutory employee [ ]    Retirement plan [ X ]    Third-party sick pay [ ]** | |
| **f Employee's address and ZIP code** | | | | **14 Other** | |

| **15 State** OH | **Employer's state ID number** 513197038 | **16 State wages, tips, etc.** 39864.98 | **17 State income tax** 934.67 | **18 Local wages, tips, etc.** 47369.42 | **19 Local income tax** 1184.26 | **20 Locality name** Toledo |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | 47369.42 | 710.57 | Swanton |

**Form W-2** Wage and Tax Statement          **2021**          Department of Treasury - Internal Revenue Service

12/20/2022



Unum
**APPEALS UNIT**
**PO BOX 9548**
**PORTLAND, ME 04104-5058**



AT 001 000344 UNLTANR1 000000
JEREMY RODRIGUEZ
PRESTON BLDG 3240 LEVIS COMMOM BLVD
PERRYSBURG OH 43551

S 000344 UNLTANR1 001209

Exhibit G

Received 12/20/2022

Received 12/20/2022

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: 1-800-858-6843
Fax: 207-575-2354
www.unum.com



August 11, 2022

JEREMY RODRIGUEZ
ALLOTTA FARLEY, CO. LPA
PRESTON BLDG 3240 LEVIS COMMOM BLVD
PERRYSBURG, OH 43551

RE:     Remer, Amy L.
        Claim Number:          21103779
        Policy Number:         953733
        Unum Life Insurance Company of America

We received your letter of August 10, 2022.  This letter will serve as a response.

We acknowledge that Ms. Remer was receiving salary continuation from her employer after her
arm amputation and that she would resume working after she was fitted with a prosthetic and
had time to adjust.  However, the earnings she received were not the result of performing her
occupational duties.  Ms. Remer's disability began when she was unable to perform the material
and substantial duties of her occupation as of September 08, 2020, which is the date we
determined her disability began.

We did not complete a disability evaluation as part of our review of Ms. Remer's claim.  Our
review evaluated whether Ms. Remer's claim was filed within the specified period outlined in the
provisions of the policy.  Based on our review, Ms. Remer's written proof of claim was submitted
after the policy deadline.  She filed her claim on April 08, 2022, and this date was not within one
year of her disability that occurred on September 08, 2020.

The information you provided does not alter our prior appeal decision.  Please refer to our
appeal determination of June 10, 2022, which remains unchanged.

Mr. Rodriguez, if you have any questions, please feel free to contact me at 1-800-858-6843,
extension 48086.

Sincerely,

*Teresa B Ward*

Teresa B Ward
Lead Appeals Specialist

Filed: 12/20/2022

Enclosures:       -Claimant: Appeal

Scanned 12/20/2022